Froessel, J.
Petitioner Brown, an inmate of Green Haven Prison, instituted an article 78 proceeding in the nature of mandamus to compel respondent, the Commissioner of Correction of the State of New York, to permit petitioner free exercise of his religion. Special Term dismissed his petition without a hearing, and the Appellate Division unanimously affirmed. Similar petitions from a number of other inmates seeking the same relief were likewise disposed of.
More specifically, petitioner alleged in his verified petition that he “is of the Islamic faith by religious choice and profession and seeks spiritual advice, ministration and religious services of this faith from the local temple of Islam, located at 102 West 116 Street, New York, New York in harmony with § 610 of the Correction Law for the State of New York ”. Petitioner further alleges that respondent “ does not allow petitioner religious services and spiritual advice and ministration from recognized clergyman of his profession and choice ”, and that he and his coreligionists are ‘ ‘ forced to hold religious services in the prison yard”.
The answer filed by respondent consisted of a general denial of the allegations of the petition and, in addition, as an affirmative defense incorporated affidavits of the Commissioner of Correction and the Acting Warden of Green Haven Prison denying the claimed deprivation of petitioner’s rights.
In his affidavit the Commissioner stated that the local temple of Islam whence petitioner seeks spiritual advice is headed ‘1 by one Malcolm X. Little who, according to the records of the New York State Department of Correction, has a previous criminal record The record, a copy pf which was attached to the *534 affidavit, disclosed that Malcolm X. was arrested in 1944 for larceny of a fur coat, and received a suspended sentence of 3 months, and in 1946 for breaking and entering in the nighttime and larceny (4 counts), for which he received 4 consecutive sentences of 8 to 10 years each.
The Commissioner concluded that in “ the interests of safety and security of the institution concerned and a matter of long standing policy, the allowing of inmates to communicate with or to be ministered to by a person with a criminal background would not be consistent with the good administration of this institution. ’ ’ He denied that the inmates were required to hold services in the prison yard, stating that if such services were being held, they were not officially authorized services. The Acting Warden also stated that at no time have inmates been forced to hold religious services in the yard; that those who have done so acted voluntarily, and were not interfered with by the prison officials.
The Commissioner and the Acting Warden both stated that inmates were permitted to worship according to their religious beliefs, and that no inmates were hampered in the free exercise thereof; that the institution provided chaplains for the three major faiths (Protestant, Catholic and Jewish), and that, where possible, chapels were provided for organized religious observance. We are told in respondent’s brief, although it was not alleged in the answer or the affidavits annexed thereto, that inmates ‘1 who profess the Moslem faith are permitted to communicate with and receive spiritual ministration from any of a number of Moslem religious groups ”. The local temple of Islam headed by Malcolm X. Little is not among them.
Respondent maintains that the exercise and enjoyment of religious worship by an inmate of a penal institution is not absolute, but subject to reasonable rules and regulations established for the government of such institution; and that the Commissi oner has not abused his discretion in denying petitioner the spiritual ministration requested. No rules of the Department of Correction appear in this record nor have any been called to our attention.
Both the Constitution of the United States (First Amendment) and of the State of New York (art. I, § 3) protect religious liberty and freedom of worship. It is well settled that *535 the First Amendment, which prohibits Congress from enacting any ‘ ‘ law respecting an establishment of religion, or prohibiting the free exercise thereof ”, has been incorporated into the Fourteenth Amendment as a prohibition against the States (Cantwell v. Connecticut, 310 U. S. 296, 303). The New York State Constitution granting freedom of religious worship contains this proviso: “ but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of this state ”. This constitutional provision is implemented by section 610 of the Correction Law, which in relevant part provides as follows:
“ All persons who may have been or may hereafter be committed to or taken charge of by any of the institutions mentioned in this section [penitentiaries and other correctional institutions], are hereby declared to be and entitled to the free exercise and enjoyment of religious profession and worship, without discrimination or preference.
# * #
“ The rules and regulations established for the government of the institutions mentioned in this section shall recognize the right of the inmates to the free exercise of their religious belief, and to worship God according to the dictates of their consciences, in accordance with the provisions of the constitution; and shall allow religious services on Sunday and for private ministration to the inmates in such manner as may best carry into effect the spirit and intent of this section and be consistent with the proper discipline and management of the institution; and the inmates of such institutions shall be allowed such religious services and spiritual advice and spiritual ministration from some recognised clergyman of the denomination or church which said inmates may respectively prefer * * *; such services to be held and such advice and ministration to be given * * * in such manner and at such hours as will be in harmony, as aforesaid, with the discipline and the rules and regulations of the institution * * (Emphasis supplied.)
While this section confers upon prison inmates the right to religious services, spiritual advice and ministration from some recognized clergyman, it also expressly authorizes the reasonable curtailment of such rights if such is necessary for the *536 “ proper discipline and management of the institution Thus freedom of exercise of religious worship is not an absolute but rather a preferred right; it “ cannot interfere with the laws which the State enacts for its preservation, safety or welfare ” (People v. Sandstrom, 279 N. Y. 523, 530). While freedom to believe is absolute, freedom to act is not. The latter is subject to regulation for the protection of society. (Cantwell v. Connecticut, supra, at pp. 303-304.) “ Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system ” (Price v. Johnston, 334 U. S. 266, 285).
In support of the position which respondent has taken with respect to petitioner’s exercise of his religious belief, the Attorney-General has annexed to his brief excerpts from various magazine and newspaper articles which describe the “ Muslim ” cult to which the temple of Islam belongs. Respondent maintains that the potential dangers inherent in permitting the dissemination of their beliefs among the prison population warrant the restrictions imposed. While such potential dangers, if realized, may justify the curtailment or withdrawal of petitioner’s qualified rights, mere speculation, based upon matters dehors the record, is insufficient to sustain respondent’s action.
Petitioner concedes that communication “ with a minister who has a prior criminal record may perhaps be prohibited”. In his brief, he states that he “ did not seek to communicate with or receive spiritual advice from any specific individual ’ ’. The Commissioner has not designated any “ recognized clergyman ” of petitioner’s denomination or church. Petitioner is entitled to the rights conferred upon him by the Constitution and section 610 of the Correction Law, subject to their limitations and the reasonable rules and regulations of the Commissioner of Correction.
Accordingly, the order appealed from should be reversed, and this proceeding remitted to Special Term for a hearing to determine to what relief petitioner is entitled under the facts and within the statute and such reasonable rules and regulations of the Commissioner of Correction as are “ consistent with the proper discipline and management of the institution ” (§ 610).