The People of the UNITED STATES ex rel. Emanuel WASHINGTON, Plaintiff,

v.

Edward M. FAY, Warden, Green Haven Prison, and Paul D. McGinnis, Commissioner of Correction of the State of New York, Defendants.

United States District Court
S. D. New York.
June 6, 1963.

Louis J. Lefkowitz, Atty. Gen., Albany, N. Y., for defendants.

No appearance for plaintiff.

RYAN, Chief Judge.

Emanuel Washington, appearing for himself and three others, has filed a series of papers in this Court in which he has designated himself as plaintiff and the Warden of Green Haven State Prison, New York, and the Commissioner of Corrections of New York as defendants.

In his "Petition For Show Cause", Washington seeks "redress from persecution and the deprivation of the Freedom of Religious Worship, Pursuant to the First and Fourteenth Amendments" Art. I, Sec. 3 of the New York Constitution and Sec. 610 of the New York Correction Law,[1] McK.Consol.Laws, c. 43.

1. Sec. 610 of the Correction Law provides for the recognition of the rights of worship consistent with proper discipline and management of the institution. Under

We accept the petition filed by petitioner as a complaint. Service has been effected on the defendants, who have appeared and answered by the Attorney General of New York.

The jurisdiction of this Court is invoked under the Civil Rights Act 28 U.S.C.A. § 1343 and 42 U.S.C.A. § 1981. The relief sought appears to be an injunction restraining the Warden of Green Haven Prison and the Commissioner of Correction of the State of New York from "persecution and other discriminatory practices" and directing them to permit a minister of the Muslim sect to guide petitioner and his fellow prisoners in "Prayer and Meditations".

A reading of the papers submitted discloses that petitioner is presently lawfully committed on a judgment of conviction from a State Court of competent jurisdiction.

Out of a mass of immoderate and unjustified accusations, there appears to emerge a charge of deprivation of constitutionally protected rights in that petitioner and his three fellow prisoners have been segregated from the others and deprived of the guidance of their own minister, and of the right to receive prayer books, Holy Koran magazines and newspapers, solely because they are adherents of the "Muslim Brotherhood".

The principal defense asserted is that the exercise of this "religion" by its followers must be regulated in group practice because, without such regulation, it would constitute a grave and immediate danger to the peace and security of the various New York prisons and the particular prison in suit. It is further asserted that the claimed "religion" is not an Islamic religion but a secret, dangerous society advocating violence, hate and vengeance on the white men detrimental to prison discipline, peace and security. The prison authorities further allege that, in pursuance of these objectives, its adherents in the various prisons have formed secret societies known as the "Muslim Brotherhood" which by a written constitution (a copy of which is attached to the answer) formulate secret plans, strategy and policies to be carried out by its members in the various state prisons. The defendants allege that petitioner and his followers have been segregated for breach of prison discipline, having nothing whatever to do with religion or religious beliefs. The answer also asserts that, in keeping with the New York Correction Law, rules and regulations have been promulgated by the Commissioner defining the qualifications required of and the opportunities for ministrations by ministers of recognized religious faiths.

This is not an isolated case—three such suits were filed in the Northern District of New York by prisoners in Clinton Prison (Pierce v. LaVallee, 2 Cir., 293 F.2d 233); five in the Western District of New York by prisoners of Attica Prison; ten more in the Northern District of New York; and several in the New York State Court from which emerged the leading case Brown v. McGinnis, 10 N.Y.2d 531, 225 N.Y.S.2d 497, 180 N.E.2d 791, on a petition from Green Haven Prison, the institution here under consideration.

That a claim cognizable in the first instance in this Court is pleaded under the Civil Rights Act was settled by Chief Judge Clark of this Circuit in 1961 in Pierce v. LaVallee, supra, on an appeal from Judge Brennan's dismissal of the complaint on the ground that it raised questions of prison discipline which should be resolved only in the State courts.

The complaint there alleged denial of permission to purchase the Koran, solitary confinement because of religious beliefs, and denial of permission to establish contact with a spiritual advisor because he was not on an approved correspondence list. The Court of Appeals affirmed Judge Brennan's dismissal of

Sec. 112 of the Correction Law, the Commissioner is empowered to promulgate regulations pertaining to religious service and ministrations. It appears that the Commissioner on June 29, 1962 adopted such regulations.

the first and third contentions—the first because it agreed with the District Court, that the Commissioner's action in approving for purchase the particular edition sought removed probability of a continuance of denial of this right, and the third claim because it had apparently been abandoned. The Court remanded for trial the second claim—whether the plaintiffs "were disciplined solely because of their religious beliefs" (293 F.2d p. 236).

After a hearing, Judge Brennan again dismissed the complaint. He received evidence on the "spiritual adviser" claim but declined to pass on it because, in the interim, the Court of Appeals of the State of New York had disposed of the question in Brown v. McGinnis, supra.

In dismissing the claim that plaintiffs had been punished solely for religious beliefs, Judge Brennan found that the Muslim Brotherhood as it existed at Clinton Prison was not a religion but rather a secret organization which was a fomenting point for unrest and frustration, and that plaintiffs had been punished for their membership in the Brotherhood and segregated as a proper and necessary step in the insurance of discipline and good order within the prison and that, in so doing, the Warden had violated no rights. An appeal from that decision is presently pending in the Court of Appeals for the Second Circuit.

The evidence before Judge Brennan was the Constitution of the Muslim Brotherhood, (the one before us), the history of its purpose and the "agitating" activities of the plaintiffs as leaders and teachers of the Brotherhood.

Aside from the evidence of the particular activities of the plaintiffs, the principal issue before that Court and now before the Court of Appeals is the one before us and a determination as to the lawfulness or unlawfulness of petitioners' segregation there would be dispositive if not conclusive of the issue raised here. In addition, and this is most persuasive, the entire question of petitioner's right to the free exercise of this "religion" in the Green Haven Prison under the 1st and the 14th Amendments of the Constitution as measured against security and disciplinary needs in that particular State prison is now before the State courts (Brown v. McGinnis, supra, on a remand from the Court of Appeals of New York) and very specifically their right to the guidance of a minister of this sect. Undoubtedly, the recently enacted regulations of the Commissioner in this respect will be weighed by the State court.

Because of the decision in the New York Court of Appeals and the pendency of that suit in the State court, Judge Bonsal of this Court on August 7, 1962 dismissed a petition brought by the above-named Brown and 24 others to compel the Prison Warden and Commissioner to permit petitioners the exercise of their religion. Judge Bonsal held that the petitioner, having instituted proceedings in the State courts and having been successful in obtaining his remedy, should complete the State court proceedings. The relief sought herein is identical to that sought in those two cases: freedom to exercise the Muslim "religion" in the Brotherhood in Green Haven Prison. The named petitioner alone differs but the suit is clearly one brought in a representative capacity and a decision there may well be collateral estoppel if not *res judicata.*

The New York Courts may be relied upon to protect and safeguard Constitutional rights of plaintiffs; they have so ruled. The highest court in the State has laid down the principles which must guide the lower courts and it is again available for review and appeal, and to pass upon a final determination of the lower court.

It would be presumptuous and an unwarranted intrusion on the jurisdiction of the State courts for us to now exercise our jurisdiction. For these reasons, the complaint is dismissed without costs, without prejudice to the filing of a suit should there be occasion for such action in the future.