William SaMARION and Thomas L. Bratcher, Plaintiffs,

v.

Paul D. McGINNIS, Commissioner of Correction of the State of New York, and Walter H. Wilkins, Warden of Attica State Prison, Defendants.

James X. J. WALKER, Joseph X. Magette, Arthur Johnson, Plaintiffs,

v.

Paul D. McGINNIS and Walter H. Wilkins, Defendants.

Case No. 1.

In the Matter of Willis X. BRYANT, Plaintiff,

v.

Walter H. WILKINS, Warden of Attica Prison, Attica, N. Y., and Paul D. McGinnis, Commissioner of Correction of the State of New York, Defendants.

In the Matter of George X. JONES, Plaintiff,

v.

Walter H. WILKINS, Warden of Attica Prison, Attica, N. Y., and Paul D. McGinnis, Commissioner of Correction of the State of New York, Defendants.

In the Matter of Joseph X. MAGETTE, Plaintiff,

v.

Walter H. WILKINS, Warden of Attica Prison, Attica, N. Y., and Paul D. McGinnis, Commissioner of Correction of the State of New York, Defendants.

Case No. 2.

James RICHEY, Plaintiff,

v.

Walter H. WILKINS, Warden of Attica Prison, Attica, N. Y., and Paul D. McGinnis, Commissioner of Correction of the State of New York, Defendants.

Lionel X. JONES, Plaintiff,

v.

Walter H. WILKINS, Warden of Attica Prison, Attica, N. Y., and Paul D. McGinnis, Commissioner of Correction of the State of New York, Defendants.

James R. 2X PENDER, Plaintiff,

v.

Walter H. WILKINS, Warden of Attica Prison, Attica, N. Y., and Paul D. McGinnis, Commissioner of Correction of the State of New York, Defendants.

Larry X. DeBERRY, Plaintiff,

v.

Walter H. WILKINS, Warden of Attica Prison, Attica, N. Y., and Paul D. McGinnis, Commissioner of Correction of the State of New York, Defendants.

James X. WILSON, Plaintiff,

v.

Walter H. WILKINS, Warden of Attica Prison, Attica, N. Y., and Paul D. McGinnis, Commissioner of Correction of the State of New York, Defendants.

Case No. 3.

Shahid MUHAMMAD, William X. Sands and Johnny Lawrence, Plaintiffs,

v.

Walter H. WILKINS, Warden of Attica Prison, Attica, N. Y., and Paul D. McGinnis, Commissioner of Correction of the State of New York, Defendants.

Major X. HARDEN, Harvey X. Nichols and Reuben X. Jarrett, Plaintiffs,

v.

Walter H. WILKINS, Warden of Attica Prison, Attica, N. Y., and Paul D. McGinnis, Commissioner of Correction of the State of New York, Defendants.

Case No. 4.

Civ. 9395.

United States District Court
W. D. New York.
April 12, 1966.

Jacob D. Hyman, Wade Newhouse, Jr., Richard F. Griffin, Buffalo, N. Y., for plaintiffs in Case No. 1.

John G. Putnam, Jr., Alexander C. Cordes, James J. McLoughlin, Joseph C. Tisdall, James O. Moore, Jr., Alvin M. Glick, Buffalo, N. Y., for plaintiffs in Case No. 2.

Paul I. Birzon, Buffalo, N. Y., for plaintiffs in Case No. 3.

Alvin M. Glick, James O. Moore, Jr., John G. Putnam, Jr., Alexander C. Cordes, Buffalo, N. Y., for plaintiffs in Case No. 4.

Louis J. Lefkowitz, Atty. Gen., State of New York (William D. Bresinhan, Asst. Atty. Gen., of counsel), for defendants.

HENDERSON, District Judge.

Preliminary to consideration of the plaintiffs' principal requests for relief, the court will deny plaintiffs' motion in case No. 2 for removal of their case to this court, but will permit the plaintiffs, not already parties to this suit, to intervene as parties-plaintiff in actions Nos. 1, 3 and 4. Actions 1, 3 and 4 are hereby consolidated.

On May 25, 1964, in Sostre v. McGinnis, 334 F.2d 906, the Second Circuit Court of Appeals directed this court to retain jurisdiction over the matter and, after a period of one year, to entertain applications by the parties in the event unreasonable delay should occur on the part of the state. Four months ago this court entered orders which applied to several of the plaintiffs now before the court and which stayed their actions until March 10, 1966. The state Supreme Court, on March 29, 1965, had held existing, so-called regulations of the Commissioner of Correction unconstitutional and had directed the promulgation of rules and regulations.[1] That decision was on appeal and this court's orders were entered in the belief that constructive state action was imminent. The Appellate Division of the Supreme Court, Fourth Department, then reversed and directed a hearing. Leave to appeal to the New York Court of Appeals was subsequently denied. Thus, it now appears that the state court actions, brought by several of these plaintiffs, are in substantially

---

1. Bryant v. Wilkins, 45 Misc.2d 923, 258 N.Y.S.2d 455 (Sup.Ct.1965).

the same posture as when they were initiated.

Both the state and federal courts have agreed that the Black Muslims' status as a religion must be accepted and is not open to question in the courts. However, in his affidavit in opposition to the plaintiffs' motions, the Commissioner of Correction has predicted dire consequences, should the practice of the Black Muslim religion be permitted in the state prison system. This court, of course, does not intend to take any action which reasonably may be anticipated to impair prison discipline or security. The thorough and thoughtful opinion of the Second Circuit Court of Appeals in Sostre v. McGinnis, supra, certainly should dispel any fears of the defendants and should abundantly demonstrate the federal courts' recognition of the sensitivity of the problems involved.

However, that opinion of the Circuit Court, with equal clarity, indicated the need for proper and expeditious action to resolve the serious issues presented. In the court's view, the defendants' approach to the problems involved has and is effectively preventing any reasonably expeditious action by this court or any state court. This approach is indicated by Commissioner McGinnis' affidavit in opposition to this motion. At page 5 of his affidavit Commissioner McGinnis states:

> "In the judgment of your deponent, the State should have a trial in State Court *so a record may be made upon which rules and regulations relating to the admission of Black Muslimism into the State Prison System can be prepared.* On such a hearing or trial, the State is prepared to produce evidence by various personnel of the State Prison System closely associated with the problem of Black Muslimism which will show the dangerous, treasonable, anarchistic and subversive nature of the religion. The State will also produce witnesses from other states, highly placed in the administration of their respective State Penal Systems, to testify as to the dangerous nature of this religion. *After such a hearing or trial, a record or background can be produced upon which rules may be made concerning the practice of Black Muslimism."* [Emphasis added.]

This, of course, is an admission that the state officials have yet to promulgate rules and regulations addressed to the practice of religion by the Black Muslims in the prison system.

Those rules and regulations which have been promulgated and have been relied upon by the state in the past,[2] certainly do not address themselves to issues surrounding the practice of the Black Muslim religion in the prison system but, in the main, purport to set qualifications for clergymen. They vaguely refer to clergymen of an "approved" denominational faith, to "recognized" religious groups, and limit visits with inmates to clergymen of the inmate's faith prior to commitment. On their face they obviously could be utilized to exclude clergymen to whom the state has and could have no reasonable objection and, without legitimate basis, to prevent inmates from exercising proper religious rights. In practice, however, they are a vehicle for suppression of the Black Muslim religion. That the rules and regulations in their present form may not be utilized constitutionally to preclude these plaintiffs or inmates of other religious persuasions from the exercise of their religious rights, would appear clear. See Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); Kunz v. People of State of New York, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951).

Defendants' counsel argues that the very nature of the Black Muslim religion precludes the adoption of any rules and regulations addressed to the practice of the Black Muslim religion in the state prison system. This argument assumes that the adoption of rules and regulations requires a grant of rights which would

2. Codes, Rules and Regulations of the State of New York, Vol. 7, §§ 59.1–59.9.

impair prison discipline and security. Such a view is contrary to every decision of the state and federal courts. While meaningful rules and regulations should recognize the full array of rights attending the practice of a religion, each of those rights is subject to such limitation as may be required to preserve prison discipline and security. In short, the rules and regulations should be nothing less and nothing more than an accurate reflection of the state's policy with respect to each and every aspect of possible practice of the Black Muslim religion in the state prison system.

■ The courts, of course, recognize the expertise of correction officials in the area of prison security and discipline and are prepared to give great weight to their judgments. For that reason, the function of the courts is not to draft such rules and regulations, but to hold hearings or conduct trials on their reasonableness once they have been drafted. Indeed, such a procedure is apparently anticipated under New York law. See Correction Law, McKinney's Consol. Laws, c. 43, §§ 112, 610; Brown v. McGinnis, 10 N.Y.2d 531, 225 N.Y.S.2d 497, 180 N.E.2d 791 (1962).

Such a course of action is suggested by the opinion of the Second Circuit Court of Appeals in Sostre v. McGinnis, 334 F.2d 906, 911-912 (2d Cir. 1964). Writing for the court, Circuit Judge Paul R. Hays framed the issue as follows:

> "The problem presented by the Muslim group is not whether they should be permitted to have congregational services, a minister, religious literature, but rather, under what limitations protective of prison discipline they should be permitted these rights.

> "It is of little use for us to announce that because of the religious content of the Muslims' beliefs and practices they must be given the right, even in prison, to follow the dictates of their faith, if we find it necessary immediately to add 'of course all these rights are subject to such reasonable rules and regulations as the authorities impose.'

> "In other words the nub of this whole situation is not to be found in the existence of theoretical rights, but in the very practical limitations of those rights which are made necessary by the requirements of prison discipline."

Continuing, Circuit Judge Hays makes the following observations and suggestion:

> "It is not the business of the Federal Courts to work out a set of rules and regulations to govern the practices of religion in the state prisons. Surely this is a task for the state authorities to undertake. We do not stop with an empty declaration of rights accompanied by generalities as to proper limitations on those rights. *We prefer, having given expression to the requirement, that insofar as possible within the limits of prison discipline, the Muslims be allowed what they ask for, not to leave it at that, but to request that the state authorities propose the rules and regulations which they believe are necessary."* [Emphasis added.]

■ In view of the delay to date and the present posture of plaintiffs' state court actions, the court believes it proper to echo those observations and, in addition, to give effect to that suggestion. Accordingly, the Commissioner of Correction is directed to promulgate, put into effect, and file with the Clerk of this court, within thirty (30) days, a set of rules and regulations to govern the plaintiffs and others similarly situated in the practice of their religion. Those rules and regulations should fully recognize those rights which normally attend the belief in and practice of a religion in the state prison system, but the rules and regulations may limit and restrict the exercise and practice of those religious rights by Black Muslim inmates in such manner or measure as is necessary to the protection and preservation of prison security, discipline or other legitimate prison interest.

Reasonable compliance with this order should provide a framework and foundation for the securing of expeditious and meaningful action in the state courts. As the court understands it, the case brought by several of these plaintiffs is now in a posture for an almost immediate trial and easily may be geared to testing the reasonableness of the Commissioner's rules and regulations. However, a word of caution is in order. While the soundness of the principles which prompted this court to abstain, and the Second Circuit Court of Appeals to approve that abstention, is beyond question, those same principles will not tolerate further delay. For that reason the court will continue to retain jurisdiction of this matter, will direct that the plaintiffs and their counsel be furnished with a copy of the Commissioner's rules and regulations, and will permit the plaintiffs at any time, on proper notice, to move for such other and further relief as may become necessary.

Should the defendants wish a stay of this order, that stay should be sought before the Second Circuit Court of Appeals. So ordered.