39 N.Y.2d 721 (1976)
In the Matter of Jamie Barnes, Appellant,
v.
J. Edwin La Vallee, as Superintendent of Clinton Correctional Facility, Respondent.
In the Matter of Jamie (CID) Barnes, Appellant,
v.
J. Edwin La Vallee, as Superintendent of Clinton Correctional Facility, Respondent.
Court of Appeals of the State of New York.
Argued February 17, 1976.
Decided April 6, 1976.
Ira P. Sloane for appellant in the first above-entitled proceeding.
Anne M. Srebro for appellant in the second above-entitled proceeding.
Louis J. Lefkowitz, Attorney-General (Frederick R. Walsh and Jean M. Coon of counsel), for respondent.
In Matter of Jamie Barnes v La Vallee: Chief Judge BREITEL and Judges JASEN, GABRIELLI and JONES concur in memorandum; Judge WACHTLER dissents and votes to reverse in a separate opinion in which Judge FUCHSBERG concurs in another dissenting opinion; Judge COOKE taking no part.
In Matter of Jamie (Cid) Barnes v La Vallee: Chief Judge BREITEL and Judges JASEN, GABRIELLI and JONES concur in memorandum; Judges WACHTLER and FUCHSBERG dissent and vote to reverse in separate dissenting opinions; Judge COOKE taking no part.
*722 MEMORANDUM.
Orders in both proceedings are affirmed, without costs. Despite able and earnest presentations by counsel (assigned by this court) in each proceeding, the fact remains that the initiating petitions are legally insufficient. Among other things, they fail to allege facts to establish the preconditions to the relief requested. Moreover, the gravamen in each petition is too general, vague, and insufficient to permit the court to consider other than abstract questions *723 about an inadequately described or identified "religion" and its purported requirements, or the "literature" which concededly refers to a poster not before this court as a part of the record. This protracted and futile litigation should never have proceeded this far through three levels of courts. On the other hand, petitioner is an imprisoned and a more or less incoherent, indigent litigant who should have received better assistance at the nisi prius level. The disposition is without prejudice to the making of new applications to the Supreme Court of jurisdiction which should assign counsel to restate, if necessary, and prosecute the applications on behalf of petitioner. Then, as appropriate, on notice to proper parties, the court should promptly resolve the issues raised, if any, and grant such relief, if any, as may be indicated.
WACHTLER, J. (dissenting).
Although I agree that we cannot finally resolve either case on its merits, it is my view that outright dismissal will only further delay the adjudication of "preferred" rights under the First Amendment (Matter of Brown v McGinnis, 10 N.Y.2d 531, 536). Both cases have already been unnecessarily protracted and should be remanded to the trial court for prompt hearing and resolution.
As to the claim that the respondent unlawfully refused to hand over an unsolicited publication sent to petitioner in the mail from the "Anarchist Black Cross", we know only that the prison authorities refused to deliver mail to the petitioner and subjected him to disciplinary sanctions, in plain contravention of their own rules (Administrative Bulletin, No. 60).[*] We know nothing of the mail's nature for the simple reason that the petitioner did not possess the publication when his petition for relief was drafted and consequently it is not a part of the record.
Relief was denied in Supreme Court solely on the basis of the definition of anarchist. In my view the censorship of mail addressed to a prisoner may only be effected to achieve a substantial governmental interest, e.g., to prevent a clear and present danger to the institution (Procunier v Martinez, 416 US 396). Here, the respondent has presented no justification for censoring this particular material. Vague characterizations as to the publication will not authorize suppression absent some indication that the material will by its nature foment *724 riot or that the petitioner is disseminating inflammatory documents.
In the second case, this same petitioner asserts that his religion requires him to wear a beard, and that in violation of the First Amendment, prison authorities have compelled him to remain clean shaven. The pro se pleading was styled in the nature of an article 78 petition and the courts below, taking the characterization at face value, dismissed on the ground that the petitioner had not exhausted his administrative remedies. Completely overlooked was the fact that section 610 of the Correction Law assured all prisoners in this State the free exercise of their religious beliefs and subdivision 3 of section 610 authorizes the institution of a proceeding by any prisoner who believes his rights have been violated. There is no requirement in this statute that a prisoner first exhaust administrative remedies before seeking judicial review of his First Amendment claim.
On the appeal to this court the majority has sustained the dismissal solely on the ground that the petition is legally insufficient particularly because the prisoner's religion was inadequately described or identified.
It is true, of course, that the petitioner's religion, the nature of its tenets, indeed the extent of the petitioner's fidelity to the religion are all facts which he must prove as "preconditions to the relief requested". But although they must be proven at the hearing, they need not be alleged in the pleading, at least not under the modern, liberal pleading rules. There is no longer any requirement in this State, as there once was, that the pleading must allege the "material facts * * * on which the party pleading relies" (Civ Prac Act, § 241). That requirement, which proved completely unworkable in practice, was abandoned in the hope "that the considerable judicial effort formerly expended in distinguishing `evidence' or `conclusions' from `facts' be directed to more useful purposes" (3 Weinstein-Korn-Miller, NY Civ Prac, par 3013.01).
CPLR 3013 now provides that "[s]tatements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense." It has been noted that under this statute "meticulous particularity" is not required and that the pleading should not be dismissed "unless *725 the allegations therein are not sufficiently particular to apprise the court and the parties of the subject matter of the controversy" (3 Weinstein-Korn-Miller, NY Civ Prac, par 3013.03).
Here the pleading alleges that the petitioner is a prisoner, that he is in the custody of the correction authorities, that they have required him to cut his beard and that this violates his religious beliefs. Thus it clearly puts the respondent and the court on notice that the petitioner claims that the prison authorities are violating his First Amendment rights, which as indicated are guaranteed by section 610 of the Correction Law. Perhaps it could be said that this pleading, drawn by a layman is inexpertly drafted. But it could hardly be said that it fails to apprise the court and the parties of the subject matter of the controversy. To deny this prisoner access to the courts because of the alleged deficiencies of his pro se application is the height of formalism. He should at least be heard on his complaint.
Apparently the majority feels that is not warranted here because there is some indication in the record that the petitioner professes pantheism, "an undefined and unheard of religion". In effect they have taken judicial notice of the "fact" that there is no such religion, or that it does not, as petitioner alleges, prohibit the cutting of his beard. The courts of course cannot take judicial notice of the tenets of a particular religion (Rector, Churchwardens & Vestrymen of Christ's Church v Collett, 240 N.Y. 563) and are even less equipped to judicially notice the existence or nonexistence of an "unheard of religion". These are factual matters which can only be resolved at a hearing.
It may well be that, if granted a hearing, the petitioner will be unable to prove his allegations regarding his religious beliefs. If that occurs it would seem unlikely that this case would, as the majority fears "establish a precedent which would be productive of even more useless and expensive litigation." In any event it is hard to see how a dismissal without prejudice to the making of new applications will serve judicial economy. Experience has shown the contrary to be true. In fact it is quite clear that by enacting the CPLR's liberal pleading rules the Legislature "sought to discourage time-consuming pleading attacks which were unlikely to result in a final disposition of the action on the merits (see 3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3026.02) and *726 which would have a tendency to defeat the over-all objective of the Civil Practice Law and Rules `to secure the just, speedy and inexpensive determination of every civil judicial proceeding.' (See CPLR 104.)" (Foley v D'Agostino, 21 AD2d 60, 65-66.)
The order appealed from should be reversed and the case remitted to the Supreme Court for a hearing on the merits.
FUCHSBERG, J. (dissenting).
I concur in the dissenting opinion of Judge WACHTLER, but I would go one step further as to the mail item.
Petitioner's complaint alleged simply that a piece of paper with writing on it, which he had received in the mail, had been summarily confiscated by prison officials. Respondent's opposing papers suggest nothing to the contrary. As the present possessor of the mailed item, he must be familiar with its contents. Yet, he makes no claim, for instance, that it has any of the characteristics of an object whose very presence in a prison would be dangerous.
In short, it appears uncontroverted that the mailed item was of the sort which at least ought properly to have been submitted to the Facility Media Review Committee (Administrative Bulletin, No. 60). I, therefore, respectfully urge that there is no need to remand for a court hearing on that issue.
The petitioner has indicated that he would find it acceptable relief were we to order the disputed piece of mail submitted to the committee. Indeed, that was his original request.
If the purpose of the remand is to permit the court, instead of the committee, to determine whether petitioner is entitled to receive the mailed item, I believe such a bypass would be unwise under the present circumstances. The institution of such presumptively objective committees acting pursuant to written standards represents a step forward in securing prisoners their constitutional rights. Here, it appears the committee has never even seen the document in issue. There is thus no evidence to indicate that it would rule other than fairly on the merits.
The general principle requiring the exhaustion of administrative remedies prior to review by a court exists in great measure precisely because it is desirable to have a unitary rather than a dual view of what the written standards mean. Correctional administration is truly an area in which expertise should be invaluable; a court ought, in all instances save *727 where it is demonstrably futile, to have the benefit of that expertise when it reviews.
Such orderly procession is most likely to guarantee that there will be consistency instead of confusion as to what the standards mean and how they should be administered. It is also more likely to encourage the goal of achieving fair internal enforcement of those standards in the first instance. If we wish to encourage committees like the Facility Media Review Committee here to act in a principled manner, we ought to demonstrate our interest in their view on a particular instance such as the one before us, rather than pre-empting responsibility for the initial determination.
The petitioner here has waited a long time for his mail, and so, understandably, the urge to grant him the most expedient relief possible is strong. Nevertheless, what he has asked is that the mail be submitted to the committee, and that, in my view, would provide the best balance among the interests before us.
Accordingly, I would remand on the question of the religious practice but would order the mail in question submitted to the appropriate committee without further delay.
In each case: Order affirmed.
NOTES
[*] To send this matter back to the prison committee at this stage of the proceedings would be counterproductive in that it would only prolong the controversy.