OPINION OF THE COURT
John S. Conable, J.
An order to show cause having been issued pursuant to Justice Vincent Doyle’s instructions, and the matter having come on to be heard before me, and a return sworn to on the 6th day of January, 1983 having been filed by the respondents herein, and due deliberation having been had, the following decision is rendered.
The petitioner, Edwin Rivera, is an inmate at the Attica Correctional Facility. He commenced this CPLR article 78 proceeding to attack disciplinary actions initiated against him on October 11, 1982. On that date, Correction Officer Ricks filed a misbehavior report alleging that Mr. Rivera had refused a direct order to submit to a pat frisk on the ground that it violated his religious beliefs to be searched by a member of the opposite sex. In a report dated October 12,1982, the adjustment committee disposed of this matter by placing the inmate into keeplock for seven days and imposing the loss of various privileges for 23 days. The *922 petitioner seeks declaratory relief adjudging the pat frisk procedure to be in violation of his religious rights and an order expunging the above-cited reports from his institutional records.
The petitioner testified that the October 11, 1982 incident took place when his company was moving from A block to see a movie. A female officer pulled him out of the company, apparently at random, to be pat frisked. Mr. Rivera indicated that he would prefer to be searched by a male officer. Sergeant Wolff told him to submit to the frisk or return to his block. After he returned to his cell, he was notified of the misbehavior report.
The petitioner is a member of the Islamic faith. He testified that , as a practicing Muslim, the Koran compels him to avoid contact with members of the opposite sex outside of marriage. To support this view, testimony was offered by Dr. William E. Gohlman, professor of Middle Eastern History and Islamic History at Geneseo State College. According to Dr. Gohlman, the Koran proscribes any sort of physical contact between members of the opposite sex. He indicated that it would be a sin for a male Muslim to have his body touched by a female even if he was fully clothed. Dr. Gohlman believed that this requirement of modesty constitutes a major tenant of the Islamic faith, and is as important as prayer and almsgiving. Furthermore, it would be a Muslim’s duty to avoid such contact, but his “sin” might be forgiven if his will to avoid such contact was violated in an emergency.
The respondents have offered no proof which refutes that legitimacy of the asserted religious objection to physical contact between the sexes. This court believes that this religious rule is violated by the procedure used in a pat frisk. Such a frisk is defined to be “a search of an inmate’s person and his clothes while the inmate is clothed, except that an inmate shall be required to remove coat, hat, and shoes. The search shall include searching into the inmate’s clothing” (Dept of Correctional Servs Directive No. 4910, Jan. 29, 1982, p 3, § III [J][2]; emphasis added).
According to the testimony of Correction Officer Brenda Valentine, in such a frisk, an officer’s hands touch an inmate’s skin at the collar and sleeves of his shirt. Further *923 more, the hands pass over the inmate’s entire torso and check through the seams of his pants up to “the vicinity” of his “genital area”. Thus the proof shows that a pat frisk performed by a female involves sufficient physical contact to violate a male Muslim’s religious beliefs.
Such a religious belief is afforded protections under New York Law. Section 3 of article I of the New York State Constitution provides that: “The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all mankind”. That inmates enjoy such a right “to the free exercise of their religious belief” is expressly recognized by subdivision 3 of section 610 of the Correction Law. The statute also authorizes the Supreme Court to enforce the rights guaranteed to inmates who are aggrieved by violations of section 610.
It is also clear that the religious rights of inmates are subject to some restrictions by correction officials. In Matter of Brown v McGinnis (10 NY2d 531), the Court of Appeals held that these religious rights are subject to “reasonable curtailment * * * if such is necessary for the ‘proper discipline and management of the institution’ ” (supra, pp 535-536, citing from Correction Law, § 610). The court also noted (p 536) that “mere speculation, based upon matters dehors the record, is insufficient to sustain” the curtailment of such rights. Therefore, it is evidently up to the respondents to prove that the restriction upon religious rights is “necessary”.
In the instant case, the petitioner has recognized that an obvious security interest is relevant to this issue. He has, therefore, requested relief of a limited scope. In evidence is a disposition of the Central Office Review Committee (CORC) in a grievance entitled “Pat Frisk of Male Inmates by Female C.O.s”, dated May 31, 1979. This disposition was as follows: “Based on advice from the Department of Correctional Services Office of Counsel the CORC has determined that except in cases of emergency, where possible, an officer of the same sex as the inmate shall conduct a pat frisk.” The petitioner asks that this procedure now be applied to Muslim inmates. The respondents submit that this grievance has been superseded by Directive No. 2230, *924 dated May 18, 1981 which provides (§ II [3], p 2) that: “Pat frisks of inmates will be performed by officers regardless of sex”.
It is asserted that this policy is required to meet security needs and to recognize the rights of female correction officers in obtaining job assignments. In balancing these competing interests, this court believes that the petitioner’s requested relief is merited.
According to section IV (D)(2)(b) of Directive No. 4910, dated January 29, 1982 a pat frisk is authorized “on inmates to be interviewed by Departmental officials, the Board of Parole, or official visitors; entering the visiting room of a maximum or medium security facility; going to and returning from housing areas and/or outside work details; when the entire or individual area of the facility or living quarters is searched; or when there are reasonable grounds to believe an inmate is in possession of contraband.” Where reasonable cause exists to believe that an inmate possesses contraband or in other emergency situations, an available officer of either sex clearly must be free to search any inmate. In other situations where searches are carried out merely as a routine precaution or at random, it would seem that male correction officers could be used to pat frisk Muslims.
The use of officers of the same sex as inmates is recognized procedure in the course of more intrusive searches (see Dept of Correctional Servs Directive No. 4910, Jan. 29, 1982, § III [K][l]; §IV [D][4][g][i]). Therefore, the only logical security interest advanced in not extending such protection to pat frisk is the avoidance of delay. However, when prisoners are transferred, it would seem likely that male correction officers would be on hand for such frisks or that a few could easily be assigned to join females in such duties. Delay would seem minimal because most Muslims are easily identifiable by the prayer caps they are allowed to wear in the institution. It is also unlikely that many nonMuslim inmates would be upset by being denied the “privilege” of being searched by a male officer. Furthermore, it is hard to see how the respondents could maintain that the current procedure is necessary for security purposes since Directive No. 4910 once expressly provided that *925 strip frisks be performed by officers of the same sex as inmates (see Dept of Correctional Servs Directive No. 4910, Jan. 20, 1981, § IV [D][2][b]). This restriction was deleted on June 6, 1981, after the department revised its “guidelines for assignment of male and female correction officers” on May 18,1981 “to insure to its employees equal rights to employment in any position” (see Directive No. 2230, § I[2]).
This court does not believe that any interest of female employees in job assignments dictates a contrary result. Some sexual distinctions in job assignments may be made where sex is related to a bona fide purpose (see Dothard v Rawlinson, 433 US 321). Having male officers available to search Muslim inmates performs a bona fide purpose; it protects the religious rights of inmates. Since several officers would usually accompany groups of inmates anyway, the requested relief would have a very slight impact on the assignment of female officers throughout the facility. The impact on the interests of female officers would, therefore, be minimal.
This court, therefore, hereby declares that performance of a pat frisk by a female officer on a male Muslim inmate in the circumstances of this case, violated religious rights guaranteed under the Correction Law and the New York Constitution. It is ordered that such a frisk must be performed by an officer of the same sex, in the absence of reasonable grounds to believe that the inmate possesses contraband or some other emergency situation. Since this court believes that it is not permissible to punish an inmate for exercising a valid religious right (see Mukmuk v Commissioner of Dept. of Correctional Servs., 529 F2d 272), it is further ordered that any reference to the reports of October 11, 1982 and October 12, 1982 be expunged from the petitioner’s institutional records.