**C. T. FULLER and Louisiana Stud, Inc.,**
**Plaintiffs-Appellants,**

v.

**FASIG–TIPTON COMPANY,**
**INCORPORATED,**
**Defendant-Appellee.**

**No. 15, Docket 78–7121.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 13, 1978.

Decided Nov. 9, 1978.

Jerry J. Strochlic, New York City (Sage, Gray, Todd & Sims, New York City, of counsel), for plaintiffs-appellants.

Gerald W. Jarrett, Garden City, N. Y. (Hall, Dickler, Lawler, Kent & Howley, Garden City, N. Y., of counsel), for defendant-appellee.

Before SMITH, FEINBERG and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

In this diversity suit for damages based on claims of conversion, breach of fiduciary duty, money had and received and breach of contract, which arises out of the sale of horses owned by plaintiffs-appellants at the annual "Saratoga Yearling Sale" in 1974, plaintiffs appeal from an order of the Eastern District of New York, Thomas C. Platt, Judge, granting defendant's motion for summary judgment dismissing the complaint pursuant to Rule 56, F.R.Civ.P. Since the record discloses a genuine issue with respect to a material fact, we reverse and remand the case for trial.

Most of the facts are undisputed. Appellee concedes that since the remainder of the facts were furnished in affidavit form by appellants they must be accepted as true upon this appeal from the district court's grant of summary judgment to it. In

March 1974, plaintiff-appellant C. T. Fuller, a Pennsylvania citizen and sole stockholder of plaintiff-appellant Louisiana Stud, Inc., a Louisiana corporation, engaged Peter D. Tattersall, a horse trader, to act as their agent through Tattersall's trade name "Rosalie Plantation" in selling at the 1974 Saratoga Yearling Sale several yearlings that had been acquired by Fuller for resale. The Saratoga Yearling Sale is an annual thoroughbred auction conducted at Saratoga, N.Y., by defendant-appellee, Fasig-Tipton Company, Incorporated ("Fasig-Tipton"), a New York corporation. The sale is limited to thoroughbreds nominated for sale by their owners and selected by Fasig-Tipton on the basis of its study of their pedigrees and its physical inspection. The five thoroughbreds involved in this case were duly nominated for sale, inspected and accepted by Fasig-Tipton for auction, and registered in the name of Fuller's wholly-owned company, appellant Louisiana Stud, Inc. On August 6, 1974, four of the horses were sold by Fasig-Tipton at the Saratoga Yearling Sale for $135,000. The fifth, valued at $32,000 remained unsold. The net proceeds of the sale after deduction of Fasig-Tipton's charges and a credit for the unsold horse, amounted to approximately $125,900.00.[1] Fasig-Tipton understood that this sum belonged to the plaintiffs.

As of August 10, 1974, Tattersall or Rosalie Planation owed approximately $117,300 to Fasig-Tipton. This debt arose out of Tattersall's purchase of other horses and advances made to him by Fasig-Tipton. It does not appear that plaintiffs were then aware of this Tattersall indebtedness. From the net proceeds realized from the sale of appellants' four horses, Fasig-Tipton charged back $32,000 for the unsold filly Herbager-Chinook and deducted Tattersall's indebtedness to it plus monies owed to it by another consignor for whom Rosalie Planation had acted as agent at the 1974 Saratoga sale. On September 11, 1974, it remitted the balance of $6,777 to Tattersall by mail-

ing to him a check in that amount made to the order of Louisiana Stud with a statement scheduling the deductions.

Fasig-Tipton did not send a copy of the statement of account to Fuller or notify him or Louisiana Stud directly that the net payment to Tattersall had amounted to only $6,777. Nor did Tattersall inform Fuller of the accounting he had received from Fasig-Tipton. On the contrary, Tattersall, by letter dated September 19, 1974, advised Fuller that he had received an incomplete accounting from Fasig-Tipton but that payment would be received within 10 days. This misrepresentation appears to have been compounded when representatives of Fasig-Tipton, instead of stating how much had actually been paid to Tattersall for appellants' account, told Fuller on September 23 or 24, 1974, that payment of the proceeds from the sale of plaintiffs' yearlings had been forwarded to Tattersall. Several days later Tattersall advised Fuller falsely that net proceeds totaling $125,900 had been received from Fasig-Tipton. As a result, Fuller and Louisiana Stud remained completely ignorant of the fact that Tattersall had in fact received only $6,777. Acting on the assumption that Tattersall had in hand $125,900 belonging to Fuller, the latter agreed at Tattersall's request to make an interest-bearing loan of the $125,900 proceeds to Tattersall for two months.

In mid-October, 1974, Tattersall, in repayment of the loan, sent to Fuller a letter enclosing two checks dated November 28, 1974, one for $125,900 representing the principal amount borrowed, and the other for $3,681.97, constituting the interest on the loan. When Fuller deposited the two checks in mid-December, 1974, the one for interest was honored but the check for $125,900 was returned unpaid.

Over the next eight months Fuller attempted without success to ascertain from Fasig-Tipton why the proceeds from the sale of the yearlings had not been remitted

1. In their papers both parties sometimes refer to the net proceeds as $125,900 and at other times as $125,672.90 (which apparently reflects the deduction of a five-day bill for keep amounting to $227.50). To avoid confusion, we use the figure $125,900, since the difference of $227.50 is immaterial for purposes of this appeal.

directly to Fuller or Louisiana Stud, Inc., and to obtain from Fasig-Tipton copies of the contract or other documentation between it and Tattersall relating to the sale of the horses and remittance of the proceeds. Various representatives of Fasig-Tipton failed to answer Fuller's queries or advised him that the "net proceeds of sale had been paid to Louisiana Stud on September 14, 1974" and that Tattersall had the documentation, without correcting Fuller's erroneous impression, communicated by him to Fasig-Tipton, that the net proceeds remitted to Tattersall had amounted to $125,900 instead of only $6,777.

On August 20, 1975, Tattersall filed a voluntary petition in bankruptcy in the United States District Court for the Western District of Louisiana. On October 7, 1975, plaintiffs-appellants learned for the first time that Fasig-Tipton had not paid to Tattersall the net proceeds of $125,900 and that Fasig-Tipton's normal procedure was to remit the proceeds of a sale to the principal's agent so that the agent could first deduct his commission before turning the balance over to his principal.

Upon learning that Fasig-Tipton had deducted from the proceeds in this case $118,895.50 owed to it by Tattersall and had remitted to him for their account only $6,777, appellants by letter to Fasig-Tipton dated October 29, 1975, demanded that it remit to them the full proceeds from the sale of appellants' horses, less the $6,777 paid to Tattersall. Moreover, Fuller swears that if he had known that Fasig-Tipton had not actually paid the total sale proceeds to Tattersall but instead had deducted $118,895.50 and remitted only $6,777, he would not have agreed to Tattersall's request for a loan of the $125,900 which Tattersall falsely represented as having been received by him from Fasig-Tipton.

Upon the foregoing facts the district court granted defendant's motion for summary judgment dismissing the complaint. Although Judge Platt rejected defendant's argument that Fuller's extension of credit to Tattersall had ratified the manner in which Fasig-Tipton had accounted for and settled with Tattersall the amounts owing to plaintiffs, he did hold that Fuller's later unconditional loan of the sale proceeds to Tattersall effectively relieved Fasig-Tipton of any liability to plaintiffs. He reasoned that plaintiffs-appellants, in extending credit unconditionally to Tattersall for the amount of the sale proceeds, had transferred to him in his individual capacity, as distinguished from that as agent, title to the proceeds of the sale for a limited period of time, and that Tattersall's failure to object to the accounting and to demand full payment from Fasig-Tipton of the proceeds constituted an effective ratification by him of the discharge of his personal debts to Fasig-Tipton.

In Judge Platt's view, plaintiffs were in the same position as they would have been if, after having received the $125,900 proceeds, they had then loaned this amount to Tattersall who in turn had used it to pay his personal debts to Fasig-Tipton. Thus he applied the principle that one who lends money unconditionally to a debtor has no recourse against a third party to whom the borrower then pays that money in discharge of his obligations to it. Although plaintiffs would not have extended the credit to Tattersall in the present case if they had known that Fasig-Tipton had not remitted the full proceeds to Tattersall, Judge Platt concluded that this would only have provided plaintiffs with a claim against Tattersall for fraud but not against Fasig-Tipton, since plaintiffs assumed the risk of Tattersall's default by extending the loan to him. This appeal followed.

## DISCUSSION

 It is a long-standing rule of agency law that one dealing with an agent for a disclosed principal may not set off the agent's personal indebtedness against amounts due to the principal, absent an agreement authorizing such a setoff. *Gerard v. McCormick*, 130 N.Y. 261, 29 N.E. 115 (1891); *Henry V. Marvin*, 3 E. D. Smith 71 (N.Y.Ct. of Com. Pleas) (1854). The rule is expressed in *Restatement of Agency* 2nd, § 299 (1958):

"*§ 299. Rights Between Other Party and Agent*

"Unless otherwise agreed, the liability of the other party to a disclosed or partially disclosed principal upon a contract made by an agent is not affected by any rights or liabilities then existing between the other party and the agent."

And in 2 N.Y. Jurisprudence § 275:

"*§ 275.—Money or property received in payment of agent's personal debt.*

"A person who knowingly receives the money or property of a principal from an agent in payment of the latter's debt does so at his peril; and if the agent acts without authority, the principal, on proof of these facts, is entitled to recover."

The rule was applied by the New York Court of Appeals, in *Gerard v. McCormick, supra*, where it affirmed the recovery by a principal from a third party of money belonging to the principal which was paid to it without authority by the agent to satisfy his own personal indebtedness, stating:

"[A] person who knowingly receives the money or property of a principal from an agent in payment of the latter's debt, does so at his peril; and if the agent acted without authority, the principal may, on proof of these facts, recover his money. (*National Bank v. Insurance Company*, 104 U.S. 54, 26 L.Ed. 693, and the cases there cited; *Wright v. Cabot*, 89 N.Y. 570; *Baker v. N.Y. National Exchange Bank*, 16 Abb.N.C. 458.) Story states the rule as follows: 'Thus a person dealing with a factor or broker is bound to know that by law a factor or broker, although a general agent, is not clothed with authority to pledge, deposit, or transfer the property of his principal for his own debt; and, if he receives such a deposit or pledge, the title is invalid, and the property may be reclaimed by the principal.' (Story's Agency, § 225)." 130 N.Y. at 266–67, 29 N.E. at 116.

The reason for the rule is that an agent is authorized to act only for the benefit of his principal. *Restatement of Agency* 2nd, § 39 (1958). The rule may, of course, be modified by agreement, custom, or ratification by the principal of his agent's use for personal purposes of the principal's property. For instance, where a custom known to the principal exists in a particular business whereby an agent dealing on behalf of several undisclosed principals maintains running accounts with various other persons in which claims against each other may be set off without reference to a particular principal, as may be the case when auctioneers or factors are authorized to sell on credit, the person dealing with the agent is protected against a principal's claim that the agent lacked authority to agree to a set-off. See *Restatement of Agency*, § 299, comment a (1958).

Applying these principles here, upon appellee's sale of appellants' horses the proceeds belonged to appellants as disclosed principals. Absent a contrary agreement or custom, appellee Fasig-Tipton was obligated to pay to appellants or to their agent Tattersall for their account the net proceeds from the sale of appellants' horses, undiminished by any personal indebtedness of appellants' agent, Tattersall, to appellee. The essential issue, therefore, is whether appellants' later agreement to loan the proceeds of the sale to Tattersall amounted to a new agreement or modification of the existing one, which had the effect of sanctioning Tattersall's set-off of his personal indebtedness against the proceeds. In resolving that issue it must be recognized that such a novation could be effectuated only if the principal acted with full knowledge of all relevant material facts. *Smith v. Kidd*, 68 N.Y. 130, 142 (1877); *Trustees of Town of Easthampton v. Bowman*, 136 N.Y. 521, 526, 32 N.E. 987, 988 (1893); *Restatement of Agency* 2nd, § 91, comment d. Here Fuller swears that when he agreed to loan the proceeds to Tattersall he did not intend to relieve appellee Fasig-Tipton of its obligation to pay over the $125,900 to it or to Tattersall as its agent. Fuller simply acted in the mistaken belief that Tattersall had in fact received the $125,900 from Fasig-Tipton and was holding this sum for plaintiffs. If Fuller had been advised that Tattersall, without authorization, had acquiesced in ap-

pellee's set-off of Tattersall's personal indebtedness against the $125,900 due appellants, Fuller would have refused to loan the proceeds to Tattersall.

Appellants thus raise an issue with respect to a material fact, i. e., whether there was a knowing agreement by appellants to relieve Fasig-Tipton of its obligation to pay over the full proceeds, $125,900, for the benefit of appellants. Absent such an agreement, the long-standing rule against set-off of the agent's personal indebtedness must govern.

On the record before us on such novation can be spelled out of Fuller's agreement to loan the proceeds from the sale of the horses to Tattersall, since Fuller made the loan in the belief, induced by Tattersall's misrepresentation, that he had the $125,900 in hand when in fact he had only $6,777. We must at this point accept as true that if Fuller had been informed that Fasig-Tipton had not actually paid over the $125,900 to Tattersall but had, without Fuller's authority, deducted $118,895.50 for Tattersall's personal debts, Fuller, instead of rewarding his untrustworthy agent by sanctioning his breach of fiduciary duty to his principal, would have refused Tattersall's request for a loan and forced Fasig-Tipton to pay over the net proceeds to appellants. Moreover, it is entirely possible that if Fasig-Tipton had lived up to its duty to pay over the net proceeds of $125,900 to Tattersall as appellants' agent, Tattersall might, once he had the full amount in hand, have decided not to use any of it to satisfy his personal debts to Fasig-Tipton but instead have paid over the money to appellants, to whom it was due. In short, absent an assent by appellants as creditors, with full knowledge of all the material facts, to the release or discharge of Fasig-Tipton as debtor through set-off of Tattersall's personal debt to it, there could not be any legally recognizable novation, ratification or modification of its duties by reason of a "new and superseding agreement." See *Schloss Bros. & Co. v. Bennett*, 260 N.Y. 243, 183 N.E. 376 (1932); *Gibbs v. Waring*, 79 Misc. 218, 219, 139 N.Y.S. 981 (Sup.Ct., App. Term, 1st Dept. 1913).

■ In setting off Tattersall's personal indebtedness to it without obtaining a new agreement or novation from appellants Fasig-Tipton acted at its peril. Having been falsely informed that payment of the net proceeds of $125,900 had been made by Fasig-Tipton to Tattersall as their agent, appellants were not under any duty to investigate further to determine whether Fasig-Tipton had violated its contractual obligation to them by setting off Tattersall's personal indebtedness against Fasig-Tipton's obligation to pay over the net proceeds for the benefit of appellants. Appellants were entitled to assume that the full $125,900 had been remitted.

The case of *Brown v. Cowden Livestock Co.*, 187 F.2d 1015 (9th Cir. 1950), relied upon by appellee, is clearly distinguishable and inapposite. There the principal, with full knowledge of all material facts, including the agent's prior receipt from the third party of proceeds due the principal and the agent's unauthorized use of part of the proceeds to pay his personal indebtedness to the third party, entered into a new agreement under which the principal looked to the agent rather than to the third party for payment, which had the effect of releasing the third party debtor from liability.

■ Nor are we persuaded by the argument that appellants' filing of a claim in bankruptcy against Tattersall amounted to an election of remedies or estoppel, precluding appellants from pursuing their present action against appellee. The bankruptcy claim, whether viewed as one in tort against a joint tortfeasor or in contract, did not constitute an election of remedies, since appellants' claim, had they refrained from asserting it, would have been discharged. *Poswick v. Cutten*, 258 A.D. 218, 15 N.Y. S.2d 877 (1st Dept. 1939), *affirmed*, 283 N.Y. 660, 28 N.E.2d 396 (1940). Appellants therefore had no choice in the matter. Besides, as a matter of state law, N.Y.Civ. Prac. Law and Rules § 3002(c) (McKinney), and federal, Bankruptcy Act § 16, 11 U.S.C. § 34, the decision to file a claim against the bankrupt's estate did not preclude an effort to hold a co-debtor responsible as well.

For the foregoing reasons we hold that it was error to have granted summary judgment dismissing the complaint. The order is accordingly reversed and the case remanded to the district court for further proceedings not inconsistent with this opinion.