642 F.2d 1109
 Ahmad Abdul AZIZ, on behalf of himself and all others
similarly situated, Appellants,
v.
Eugene S. LeFEVRE, Superintendent of Clinton Correctional
Facility, and Benjamin Ward, Commissioner of the
New York State Department of
Correctional Services,
Appellees.
 No. 937, Docket 80-2349.
 United States Court of Appeals,
Second Circuit.
 Argued March 24, 1981.
Decided May 26, 1981.
 
 Robert A. Kagan, Plattsburgh, N. Y. (Arthur J. Giacalone, David C. Leven, Prisoners' Legal Services of New York, Plattsburgh, N. Y., of counsel), for appellants.
 Alan M. Adler, Asst. Atty. Gen., Albany, N. Y. (Robert Abrams, Atty. Gen., Shirley Adelson Siegel, Sol. Gen., Albany, N. Y., of counsel), for appellees.
 Before OAKES and MESKILL, Circuit Judges, and SAND, District Judge.*
 PER CURIAM:
 
 
 1
 In this appeal Sunni Muslim inmates at Clinton Correctional Facility in Dannemora, New York, challenge the grant of summary judgment, 500 F.Supp. 725 (N.D.N.Y.1980), by the United States District Court for the Northern District of New York, James T. Foley, Judge, dismissing their complaint in which they allege that prison regulations were interfering with their First Amendment right of free exercise of religion. We reverse the grant of summary judgment and remand because the case as it comes to us contains disputed issues of fact on which the question of constitutional law may depend. In so holding, we have in mind the injunctions of Liverpool, New York and Philadelphia Steamship Co. v. Commissioners of Emigration, 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885), that the courts should not "anticipate a question of constitutional law in advance of the necessity of deciding it" and should not "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." See Ashwander v. TVA, 297 U.S. 288, 346-47, 56 S.Ct. 466, 482-83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).
 
 
 2
 This lawsuit arose out of the New York State correctional system's Directive No. 4203(A)(3)(a) (Nov. 22, 1975), which provides:
 
 
 3
 Inmates will be allowed to pray only in the privacy of their living quarters, during a religious service or in an area of the facility that has been designated for religious worship.
 
 
 4
 In addition, Clinton, a maximum security prison, has issued its own Rule 7.14, which provides: "There will be no religious services in the (prison exercise) yard or recreation area." Clinton correctional authorities have interpreted these regulations as prohibiting the observance of Salat by small groups of Sunni Muslims in the prison exercise yard, during the late afternoon recreation period.[1] Salat is a five-minute ritual prayer involving bowing and prostration on a prayer rug or its equivalent. Sunni Muslims are required by their religion to perform Salat at five prescribed times every day, the times being dependent on the position of the sun. This "prayer for forgiveness" incurs a greater blessing when performed in groups, which is the common practice of Sunni Muslims, than when performed alone; the prayer must be so observed absent a valid excuse.
 
 
 5
 The five and three-quarter acre recreation yard at Clinton not only contains a large area permitting group sports such as football, but also has divided plots called "courts" where groups of up to six inmates are allowed to participate in a variety of activities, including talking politics, singing, exercising, and individual prayer. Inmates are allowed in the recreation yard from approximately 3:00 p. m. until 4:00 p. m. during the winter and from 3:00 p. m. until sunset during the summer. The time for performance of Salat is, as indicated, controlled by the sun, and the time for performing afternoon Salat is "as long as the sun has not become yellow." The court below found (on a motion for a preliminary injunction) that in those months during the winter schedule when the sun goes down early a Sunni Muslim may have to forfeit all outdoor recreation if he is required to perform Salat in his cell, because on the winter schedule an inmate who chooses to go to his cell evidently cannot gain immediate reentry to the yard. This finding is disputed by appellees, who say that an inmate can go to the yard during the winter months and still, before the evening meal, pray in his cell at the required time between 4:00 p. m. and 4:45 p. m. The appellants, however, claim that it cannot be said with certainty, on the record below, that inmates will be returned to their cells to perform afternoon Salat at the proper "sun time" during the months of November, December, and January, and that therefore they will forfeit all outdoor recreational rights during these months, under the state policy and prison rule, if they remain faithful to their religion. This factual issue remains unresolved.
 
 
 6
 Nevertheless, in granting the motion for summary judgment, the district judge placed heavy emphasis on appellees' justification for the policy, that
 
 
 7
 to allow this prayer of movement and prostration with the group selecting inmate Sunni Muslim guards to be posted around the religious exercise and the laying out of prayer rugs by groups in the open recreation yard, where usually 800 to 900 inmates are present at one time, would cause friction and physical confrontation among the inmates, and limit their common use of the yard for other recreational purposes.
 
 
 8
 500 F.Supp. at 726. Appellees state that it is an " 'objective' fact that the plaintiffs post inmate guards around praying inmates and that these inmate guards serve no religious purpose," and from this they conclude "that praying Muslims are inordinately exposed to physical attack" thereby showing that the appellees' "security concerns are real and substantial." This "objective" fact is based upon the testimony of Sergeant LaFontaine at a hearing on the motion for a preliminary injunction, but was not subsequently asserted as a justification for the challenged policy. Moreover, appellants categorically deny that such guards were or are ever posted as contended. Thus, whether or not guards were posted or would be required to be posted, particularly if the private "courts" in the yard were used for the practice of Salat, is also a material fact in dispute, in addition to the question whether Sunni Muslims at Clinton must forgo all outdoor yard time during the winter months.
 
 
 9
 Beyond this, appellees' brief states that the policy against group prayer in prison recreational yards "has uniform statewide application and Muslim inmates are not allowed to perform Salat at Green Haven Correctional Facility." Yet an opposing affidavit was filed to the effect that Salat is permitted in the exercise yard not only by the Federal Bureau of Prisons and the California, Michigan, and New Jersey Departments of Corrections, but also at Green Haven Correctional Facility in the state of New York and without "any threat to prison security or discipline engendered." We think it would have some bearing upon the ultimate resolution of the constitutional question if, in fact, the state policy as set forth in Directive No. 4203 is not followed at Green Haven, and hence is not a "policy" at all. This is a matter not discussed in the district court's decisions on either the application for a preliminary injunction or the motions for summary judgment.
 
 
 10
 During oral argument the appellees took a position different from that taken in their brief. Evidently perceiving that there were material factual issues in dispute that might require remand, compare Fuller v. Fasig-Tipton Co., 587 F.2d 103 (2d Cir. 1978), with SEC v. Research Automation Corp., 585 F.2d 31 (2d Cir. 1978), the appellees at argument took the position that they were entitled to judgment under Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977), and Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), even on the appellants' version of the facts. We are fully cognizant of the Supreme Court's instruction in Jones to give "appropriate deference to the decisions of prison administrators and appropriate recognition to the peculiar and restrictive circumstances of penal confinement," 433 U.S. at 125, 97 S.Ct. at 2537, and the language in Bell to the same effect, 441 U.S. at 547-48, 99 S.Ct. at 1878-1879, even when First Amendment rights are involved. But we are reluctant to decide the constitutional question prematurely and unnecessarily, and indeed we have well in mind the Supreme Court's recent admonitions to us not to do so. See, e. g., New York City Transit Authority v. Beazer, 440 U.S. 568, 570-71, 582-83, 99 S.Ct. 1355, 1358-59, 1363-65, 59 L.Ed.2d 587 (1979).
 
 
 11
 We recognize also the salutary nature of Ashwander -like caution against making premature decisions. For example, in such an apparently narrow area of dispute, it would seem that the slightest accommodation by the prison authorities one way or another could eliminate the circumstance that appellants might be deprived of either all outdoor recreation during the winter months on the one hand or the right to practice their religion faithfully on the other. Again, given the fact that diverse activities, including individual, silent prayer, are permitted in the segmented areas of the prison yard known as "courts," it is difficult to understand how no arrangement other than the present prohibition can meet the asserted security needs of the situation, especially in light of the appellants' limited request for relief.[2] In any event, with the record in its present state we decline to reach the difficult constitutional question presented and remand for further development of the facts.
 
 
 12
 Reversed and remanded.
 
 MESKILL, Circuit Judge (concurring):
 
 13
 I agree that this case must be remanded for development and resolution of the material issues of fact identified by the majority. To the extent that the dictum at the end of the majority opinion suggests an approach for evaluating the permissibility of the prayer restriction, I interpret this statement to mean that the legal standards set forth in Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), and Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1979), should control on remand. As I understand the majority opinion, the plaintiffs will have the opportunity in the district court to meet their burden of proving that the restriction in question is unreasonable. See Jones v. North Carolina Prisoners' Union, supra, 433 U.S. at 128, 97 S.Ct. at 2539. I do not understand the majority opinion to suggest that the prison administrators must justify the reasonableness of their regulation, whether by showing that it is the "least restrictive means" to achieve a desired security goal, or by some other standard. Rather, Rule 7.14, like the regulation in Jones, is "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." Jones v. North Carolina Prisoners' Union, supra, 433 U.S. at 128, 97 S.Ct. at 2539 (quoting Pell v. Procunier, 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974)). See St. Claire v. Cuyler, 634 F.2d 109, 114-15 (3d Cir. 1980).
 
 
 14
 In this case, development and clarification of the material issues of fact may enable the plaintiffs to show that the promulgation of Rule 7.14 was an "exaggerated response" to a security problem, Bell v. Wolfish, supra, 441 U.S. at 551, 99 S.Ct. at 1880, rather than the exercise of "considered judgment" or "informed discretion" that is "consistent with the inmates' status as prisoners and with the legitimate operational considerations of the institution," particularly security. Jones v. North Carolina Prisoners' Union, supra, 433 U.S. at 130, 97 S.Ct. at 2540. See also Pell v. Procunier, supra, 417 U.S. at 827, 94 S.Ct. at 2806. With this understanding, I concur in the result.
 
 
 
 *
 Of the Southern District of New York, sitting by designation
 
 
 [1]
 Certain members of the appellant class alleged that they have, in fact, been punished by solitary confinement, "keeplock," and other loss of privileges for performing Salat in the prison exercise yard
 
 
 [2]
 As appellants argue in their brief:
 They do not ask for the right to pray during meals, classes or work; they do not ask that they be allowed to gather in groups larger than six (the limit for all other activities in the yard); they do not ask for a special segregated area; they do not ask that they be exempt from any of the other rules of yard conduct. They simply ask that in the area where inmates may talk, sing, exercise or cook, they be permitted to engage in quiet, dignified prayer.