OPINION OF THE COURT
John S. Conable, J.
An order to show cause having been issued pursuant to my direction on the 25th day of June, 1981, returnable before me at a term of this court held at the Attica Correctional Facility, Wyoming County, Attica, New York, on the 12th day of August, 1981, and a return sworn to on the 12th day of August, 1981, having been filed by the respondents herein, and the matter having come on to be heard before me, and due deliberation having been had, the following decision is rendered.
This CPLR article 78 proceeding involves the religious rights of Sunni Moslems incarcerated at the Attica Corree *106 tional Facility. At issue is the constitutionality of imposing disciplinary sanctions on Muslims who perform a ritual of prayer known as the “salut” in the recreation yard. Petitioners Austin and Outright received misbehavior reports on May 29, 1981 for saying such prayers in the B-Block yard. The resulting disciplinary hearing has also been challenged on procedural grounds. Petitioner Abdullah received a misbehavior report for similar behavior in May of 1980. Any attack on the validity of this disciplinary action is barred by the applicable Statute of Limitations (CPLR 217).
Abdullah joins in this action as Iman of the Sunni Moslems at Attica. He contends that the threat of such disciplinary sanctions violates his right and the rights of other Sunni Moslems to freedom of worship under the New York State Constitution.
In the course of this litigation, petitioner Austin withdrew his application for relief.
This court indicated that it would grant the request to expunge the record of disciplinary proceedings held against Cutright on the ground that he was placed in keeplock without being afforded a hearing. It appears from the record that the inmate was locked in his cell on May 29, 1981 for praying in the yard. He did not appear before the adjustment committee until June 1, 1981. At that time he was released from confinement. No finding was ever made that such confinement was necessary prior to the holding of a due process hearing.
The United States Supreme Court has held that segregation without a hearing may violate due procéss of law if not justified by emergency conditions (see Hughes v Rowe, 449 US 5). The United States Court of Appeals for the Second Circuit has held that keeplock is a form of special confinement which may not be imposed in the absence of due process protections (see Powell v Ward, 643 F2d 924). In light of these two decisions, the adjustment committee report of June 1, 1981 should be expunged.
Remaining for consideration is the propriety of threatening Moslems with disciplinary sanctions if they pray in the recreation yards. Since these prayers involve physical *107 movements, they are subject to restrictions under a current directive of the Department of Correctional Services (see Directive No. 4202, dated Oct. 1, 1981). Since this litigation was initiated, this directive was enacted to clearly provide that: “Group or demonstrative prayer by inmates will be allowed only in the privacy of their living quarters or during a religious service authorized by the Superintendent or in an area of the facility that has been designated by the Superintendent for religious worship.” (Directive No. 4202, § I; emphasis added.)
The directive imposes upon the superintendent the duty to designate such areas (after consulting with the senior chaplain) and provides that: “Areas to be used for services, prayer, or scheduled religious study should normally be reserved for a period of one to two hours duration” (see §§ Gl, 2, pp 2, 3). It appears that this directive allows inmates to say silent prayers at anytime throughout a facility. However, if an individual inmate wants to offer a short prayer invoking a physical demonstration of devotion, he evidently must perform such a prayer in his cell.
The Attica facility has a narrower rule which deals specifically with prayer in the recreation yards. According to rule 17.9, “There will be no religious services in the recreation yards”. This rule is evidently applied so as to ban prayers by individuals if such prayers involve more than silent meditation. Deputy Superintendent Charles James testified that this restriction is considered necessary to preserve peace in the recreation yards. It is feared that other religious groups may feel slighted if they observe Sunni Moslems in prayer in a yard which is supposed to be devoted to recreational activities. It is also contemplated that fights could break out if one group’s recreation interfered with a Moslem’s prayer.
Testimony was offered to show that these restrictions interfere with a Moslem inmate’s observance of his religion. It appears that a Moslem must offer a prayer five times a day at specified times determined by the position of the sun in the sky. The prayers involve physical movements: kneeling down, bending forward, touching the forehead to the ground, and motioning with the hands and arms. These actions consume about 5 to 12 minutes of time.
*108 Under the directive, it would appear that such activity is only considered proper in a cell. However, according to petitioner Abdullah’s testimony, the mandatory time for prayer can arise during the recreation period at certain times of the year. According to Deputy Superintendent James, an inmate may freely choose to enter the recreation yard, but once there must ask permission to leave. It, therefore, appears that a Moslem may have to forfeit his recreation time if he is to assure himself of an opportunity to observe his mandatory prayer.
The petitioners seek relief from these restrictions under New York law. Reliance is placed upon section 3 of article I of the New York State Constitution which provides that: “The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all mankind * * * but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of this state”.
This constitutional provision has been implemented by section 610 of the Correction Law which recognizes that inmates enjoy such rights. The New York Court of Appeals has interpreted these provisions to allow prison authorities to reasonably curtail the religious rights of inmates “if such is necessary for the ‘proper discipline and management of the institution’ ”. (Matter of Brown v McGinnis, 10 NY2d 531, 535-536.)
The court emphasized that free exercise of religious worship is a preferred right but that it “cannot interfere with the laws which the State enacts for its preservation, safety or welfare” (People v Sandstrom, 279 NY 523, 530, cited in Matter of Brown v McGinnis, 10 NY2d, at p 536).
This court believes that the restriction imposed upon the exercise of religious worship in this case cannot be sustained under the holding of McGinnis because the respondents seek to ban conduct which cannot be deemed disruptive in the recreation yards. The testimony in this matter establishes that the ritual of prayer is mandatory at specified times of the day. The actions involved in *109 performing these prayers are roughly equivalent to those involved in calisthenics, an activity clearly appropriate in the yard. The only reason this permissible activity is punished, is because it has religious significance to the Moslem inmates. Under these circumstances, it is unreasonable to force Moslem inmates to either give up their recreation time and remain in their cells or risk being caught in the yard at a time they must observe a prayer.
The narrowness of this ruling should be emphasized. There is merit to the respondents’ concern that other inmates may become jealous if they observed a group “service” being observed in an area designated for the recreation of the general population. However, the recreation areas are approximately 100 yards square. It would seem that Moslems could stand by a wall and perform prayers individually for some 10 minutes without giving the appearance of an organized service. Or perhaps arrangements could be made to allow Moslems to leave the recreation area and perform prayers in another area.
Except for this concern, this court does not believe that the 10- or 12-minute prayer is any more likely to provoke conflicts than other inmate activities allowed in the yard. Considering the size of the yard and the brevity of the prayer, it is unreasonable to ban the prayer to avoid forcing the petitioners’ religion upon other inmates. An entirely different problem would be presented if the petitioners sought to perform such rituals in the dining area, a work area or in a classroom. In such situations, the activity might be deemed disruptive.
Therefore, the respondents are hereby ordered to expunge any reference to the misbehavior report involving Mr. Outright’s prayer on May 29,1981, and the consequent adjustment committee report. It is further ordered that the respondents cease enforcing rule 17.9 so as to punish Moslem inmates for saying 10-minute individual prayers in an orderly fashion in the recreation yard, or allow them access to their cells during such times.