Gerald Abdul WALI, 81–A–5803; LeMoine Arrington, 81–B–981; Kuwasi Balagoon, 83–A–6216; Abdul Reyah, 79–A–137; Theodore Churakos, 82–C–889; Carlos Cortes, 80–B–523; Charles Culhane, 67–A–0065; Frederick Curl, 77–C–687; Kasiem Dodell, 83–A–783; Mujahid Farid, 79–A–0362; Raymond Fernandez, 81–A–2686; Ronald Fox, 82–A–2445; Carlos Gonzalez, 76–A–2277; Charles L. Harris, 81–C–470; Kenneth Johnson, 79–C–575; Jory Lowrence, 77–A–3323; Anthony McBayne, 79–B–1261; Edward McCleary, 80–B–1598; Kelvin Richardson, 80–A–3080; Lamarr Rowell, 81–C–738; Sonny Viele, 77–C–95; David Sealey, 81–A–4099; Jose Vazquez, 77–A–4295; and Albert Washington, 77–A–1528, Plaintiffs,

v.

Thomas A. COUGHLIN, III, Commissioner, Department of the New York State Department of Correctional Services; and Harold J. Smith, Superintendent of the Attica Correctional Facility, in their official and individual capacities, Defendants.

No. 84–CV–379.

United States District Court, N.D. New York.

Nov. 8, 1984.

Prisoners' Legal Services of New York, Buffalo, N.Y., for plaintiffs; Ellen M. Yacknin, Joseph Kelemen, Buffalo, N.Y., David C. Leven, Executive Director, New York City, of counsel.

Jill Paperno, on the pleading.

Robert Abrams, Atty. Gen. of the State of New York, N.Y.S. Dept. of Law, Albany, N.Y., for defendants; David B. Roberts, Asst. Atty. Gen., Albany, N.Y., of counsel.

## MEMORANDUM–DECISION and ORDER

JAMES T. FOLEY, Senior District Judge.

The motion for a preliminary injunction in this action under 42 U.S.C. § 1983 asserting deprivation of federal constitutional rights has undergone lengthy processing and prolonged consideration. The twenty-four plaintiffs are or were inmates of several New York Correctional facilities. The issue presented is important but narrow and not factually complex. The preliminary injunction is sought due to the denial of defendant Commissioner Coughlin to permit plaintiffs to receive, while inmates and when requested, copies of a thirty-page document entitled "Attica: A Report on Conditions, 1983", authored, as noted on the cover page, by the named staff of the Buffalo Office, Prisoner Legal Services of New York. The dispute concerning the grant or denial of this preliminary injunction has become intense with resultant hostile attitudes and voluminous tit-for-tat submissions that are never helpful to efficient court consideration and disposition. The attorneys should always be conscious of the responsibilities of both sides in prisoner litigation of this kind; the need to maintain to the degree humanly possible the security of state correctional facilities, balancing the established rights of inmates therein to limited federal constitutional privileges. Mutual courtesy, understanding, and cooperation by the legal representatives of the parties advances the interests of justice. Any disposition to treat the legal adversary as an enemy should be avoided.

In accord with our procedures, the motion for a preliminary injunction was made returnable before Magistrate Ralph W. Smith, Jr., in Albany. In response, Assistant Attorney General Roberts filed a Notice of Motion and a Cross-Motion. The plaintiffs then countered with a separate Cross-Motion. This unusual array of motions, and the relief sought by them, are detailed in my memorandum-decision and order of June 20, 1984, such being described as an avalanche of papers. The Magistrate heard oral argument on the motions, and filed his Order and Report-Recommendation dated April 27, 1984. The Magistrate denied the motion of the defendants to disqualify the Prisoners' Legal Services as counsel for the plaintiffs, but without prejudice to renewal if a trial is held on the merits in the district court. The separate Cross-Motion of the plaintiffs to strike specific portions of defendants' affidavits alleging involvement of the Prisoners' Legal Services of New York in the general strike of inmates that occurred at Attica Correctional Facility in September 1983 was denied. Finally, the Magistrate recommended that the motion of plaintiffs for a preliminary injunction be denied.

The recommendation to deny the initial plaintiffs' motion for a preliminary injunction was not accepted for the reasons stated in my memorandum-decision and order of June 20, 1984. My reasoning was that

an evidentiary hearing before the Magistrate was essential to evaluate properly such recommendation. The motion for a preliminary injunction was remanded to the Magistrate for an expedited evidentiary hearing. The denial of the defendants' motion to disqualify Prisoners' Legal Services as attorneys for the plaintiffs was accepted but was modified to be with prejudice instead of without prejudice to renew. The denial of plaintiffs' motion to strike portions of the submission of the defendants charging involvement of members of Prisoners' Legal Services in fostering the September 1983 general strike of Attica inmates was set aside as clearly erroneous. The plaintiffs' motion to strike such material was granted on the stated ground that in my judgment such allegations were not germane or relevant to the First Amendment content issue of a publication raised by the complaint.

The evidentiary hearing was held by the Magistrate on August 14 and 15, 1984. The Magistrate then filed an eight-page Report-Recommendation dated September 7, 1984. The Magistrate recommended that the defendants be preliminarily enjoined from refusing to allow plaintiffs to receive copies of the Attica Report in issue. Objections to the Report-Recommendation were filed in the Clerk's office by the defendants on September 24, 1984. The plaintiffs filed a Response to the defendants objections on October 2, 1984. Finally, to cap it all off, although stating that he hesitated to add to the large volume of paper which has been generated in this matter, Assistant Attorney General Roberts submitted a reply affidavit for the defendants in reply to the plaintiffs' response to the defendants' objections, such being filed in the Clerk's office on October 11, 1984. At the time of these filings, the evidentiary hearing record made before the Magistrate had not been transcribed. Again there was serious disagreement among the attorneys not only as to certain testimony given at the evidentiary hearing, but also concerning the arrangements to be made for securing copies of the transcript. Because of the disputes, I have waited for

the transcript and it was delivered to my Chambers on October 26, 1984. The transcript settles at least one disagreement. It shows that the line of questioning concerning invocation of the Fifth Amendment privilege by an inmate witness was not pursued by defense counsel. (Tr. p. 29). I have read through the 236 pages.

In his Report-Recommendation the Magistrate made eight explicit findings of fact. After review of the record my determination is that these findings of fact are fully supported by the testimony produced and exhibits received at the evidentiary hearing. Such findings are wholly accepted. 28 U.S.C. § 636(b)(1)(B). It may be helpful to appellate review to set forth these factual findings of the Magistrate:

(1) The Attica Report prepared by PLS is based primarily on information obtained from inmates therein.

(2) Copies of this report were requested by and denied to plaintiffs based on a decision ultimately and personally made by defendant Coughlin.

(3) Other reports, news articles, and court decisions critical of prison conditions and based at least in part on inmate sources have been received by inmates in various New York State prisons, including Attica, without demonstrable adverse effect on security interests.

(4) The Attica Report is no more critical of prison conditions and administration than earlier reports and articles which inmates have been permitted to receive.

(5) Defendant Coughlin's decision not to permit introduction of this report was based at least in part upon his perception that PLS or persons somehow associated with PLS were in some fashion involved in the organization of the inmate strike in September 1983.

(6) Defendant Coughlin did not apply guidelines as contained in Department of Correctional Services Directive No. 4572 dated 3/2/79 or any

other formal guidelines in deciding not to permit introduction of the Attica Report into state prisons.

(7) The Attica Report does not violate guideline 6 or 9 or any guideline contained within the said directive.

(8) Defendant Coughlin's public reaction to the Attica Report is not unlike his reaction to earlier reports.

The testimony of Commissioner Coughlin is lengthy and interesting. No one doubts that he faces daily the most serious problems that can arise in the human relationship. As noted in my previous memorandum, Chief Justice Burger commented that solutions of these problems will never be simple and easy, but the constitutional protection that inmates are entitled to must be respected. *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 137, 97 S.Ct. 2532, 2543, 53 L.Ed.2d 629 (1977). At the evidentiary hearing the Commissioner's condemnation of the Attica Report was made in blunt and strong language with emphasis that a serious factor among others for his determination was the information he had that Prisoners' Legal Services was involved in the organization of the September 1983 strike. (Tr. 59–66, 73–76). However, his testimony also gives strong support to the finding of the Magistrate that his denial to allow the Attica Report to be sent to inmates upon request to Prisoners' Legal Services was personal and without any formal application of the guidelines and procedures in Directive No. 4572 relating to receipt and review of literature and related materials to inmates. (Tr. 59, 113, 214, 215). The Commissioner stated that he applied no written guidelines, only unwritten guidelines to the Attica Report consideration, and the Attica Report is the only one that he was ever personally involved with. (Tr. 155, 158). He testified he felt very strongly that the Attica Report presented a clear and present danger, and was full, as far as he was concerned, of inflammatory remarks, with mere allegations stated as facts and no balance to so explain. (Tr. 59).

The record is replete with support for the Magistrate's finding that other critical reports, news articles and court decisions, no more critical than the Attica Report, were permitted to be received and read by Attica inmates. (Tr. 175–195, 205–214). In fact, as noted in my previous memorandum, the Attica Report received widespread publicity by holding of press conferences by the Prisoners' Legal Services in major cities of New York that undoubtedly was carried by the media into Attica and other New York prisons. (Tr. 136). The Commissioner admitted that there is nothing in the Attica Report that advocates the formation of a prisoners' union, a work stoppage, disobedience to prison rules, or to go out and break the law. (Tr. 175). The Commissioner admitted also that he could not link any Reports admitted into the New York facilities to any disturbances that have occurred in the New York prison system. (Tr. 187–188). His comparison of the Attica Report with other Reports permitted to be received by inmates is that the other Reports were written in a professional and reasonable manner, and were constructive and not inflammatory. (Tr. 77). In my judgment, an unbiased reading of the Attica Report, as the Magistrate found, indicates fairly that the information and criticisms came from the Attica inmates with whom Prisoners' Legal Services have continuous contact. From my reading of the Attica Report, I find that it contains criticisms and complaints about Attica living conditions, and inmate-correction officer conflicts and problems that are found often in the numerous state prisoner civil rights complaints filed in this federal court and discussed in published federal court opinions. The Commissioner can always resort to holding press conferences and issue press releases, as he has in the past, whenever he believes any Reports are unfair, unbalanced and their criticisms unfounded. (Tr. 184–187).

■ Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. *Procunier v. Martinez*, 416 U.S. 396, 413–414, 94 S.Ct. 1800, 1811–1812, 40 L.Ed.2d 224 (1974).

The criteria and standards for the justification of censorship of prisoner mail are set forth clearly and specifically in *Procunier, supra,* at p. 413, 94 S.Ct. at p. 1811. Although counsel for the defendants disagree, in my judgment those standards are still viable and applicable to this situation and by no means can be considered old and discredited. However, on the record made before the Magistrate, I agree with his reasoning that the plaintiffs are entitled to prevail at this stage, and the result is the same as to whether the burden of showing detriment to penological objectives is placed upon the defendants under *Procunier* or upon the plaintiffs under *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). There are substantial differences between the factual situations in *Procunier* and in *Jones.*

There is substantial evidence in the record to conclude there was exaggerated response to a security problem made without any consideration or application of the guidelines and procedures promulgated in Directive No. 4572. *See Jones v. North Carolina Prisoners' Labor Union, Inc., supra,* 433 U.S. at 128, 97 S.Ct. at 2539; *Aziz v. LeFevre,* 642 F.2d 1109, 1112–1113 (2d Cir.1981) (Meskill, C.J., concurring); *Jackson v. Ward,* 458 F.Supp. 546 (W.D.N.Y.1978). In accord with repeated cautions by the United States Supreme Court, deference to the broad discretionary authority of prison administrators in the discharge of their important responsibilities has always been kept in mind in the consideration of problems of this kind. *See Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983); *Frazier v. Ward,* 426 F.Supp. 1354, 1357, 1359 (N.D.N.Y.1977).

In the objections to the last Report-Recommendation by the Magistrate, Assistant Attorney General Roberts urges that my previous ruling that struck portions of the defendants' submission to the Magistrate, alleging involvement of Prisoners' Legal Services in the Attica strike of September 1983, precluded important key evidence from being presented at the hearing for consideration of the Magistrate. The objection in this regard states that the Commissioner's decision to deny entry of the Attica Report into the facilities was based "in large measure" upon the "apparent involvement" of Prisoners' Legal Services in the September 1983 Attica strike. At the hearing the Commissioner elaborated upon his suspicion and made the charges even more serious. (Tr. 157, 214–219, 231–232, and Def.Ex.A). As I stated in my memorandum of June 20, 1984, I do not minimize the seriousness of such charges, but I remain firm in my conviction they are not germane or relevant to the narrow First Amendment content issue of a publication presented here. The objections offer for the first time as a very analogous decision, *Vodicka v. Phelps,* 624 F.2d 569, 574 (5th Cir.1980) and as closely analogous *Pittman v. Hutto,* 594 F.2d 407 (4th Cir.1979). From my reading, there are substantial and significant factual differences from this situation. It is noteworthy that in both cases *Procunier,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) was discussed and credited as an applicable authority.

The Report-Recommendation dated September 7, 1984 is accepted and adopted. The loss of the First Amendment rights establishes irreparable harm. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976); *Fortune Society v. McGinnis,* 319 F.Supp. 901, 903 (S.D.N.Y.1970). The other essential element of likelihood of success under settled Second Circuit standards is sufficiently demonstrated. *Mattel, Inc. v. Azrak-Hamway International, Inc.,* 724 F.2d 357, 359 (2d Cir.1983); *Sperry International Trade, Inc. v. Government of Israel,* 670 F.2d 8, 11 (2d Cir.1982); *Hamilton Watch Co. v. Benrus Watch Co., Inc.,* 206 F.2d 738, 740 (2d Cir.1953).

The preliminary injunction hereby issues. The defendants are hereby enjoined from refusing to allow plaintiffs, and other inmates of New York Correctional Facilities, from receiving upon request to the Prisoners' Legal Services of New York copies of "Attica: A Report on Conditions, 1983".

The defendants in their objections request a stay of the above preliminary injunction if granted. As is my custom, the stay of the above preliminary injunction is granted only for a ten-day period from the date of this memorandum-decision and order that shall be delivered to the office of the Attorney General in Albany as of its date. This time period is allowed to afford to the defendants reasonable opportunity for the filing of a Notice of Appeal and a request for an additional stay to the Court of Appeals, Second Circuit. *See* F.R. App.P. 8(a).

It is so Ordered.