Askari Abdullah MUHAMMAD,
#017434, Plaintiff–Appellee,

v.

Louie L. WAINWRIGHT, Richard Dugger, Clayton C. Strickland, David Watson, Thomas L. Barton, R.R. Music, Defendants–Appellants.

No. 87–3179
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Dec. 28, 1987.

Charles T. Collette, Bruce A. Minnick, Douglas Mang, Mang, Rett & Collette, P.A., Tallahassee, Fla., for defendants-appellants.

Askari Abdullah Muhammad, pro se.

Before HILL, FAY and EDMONDSON, Circuit Judges.

EDMONDSON, Circuit Judge:

This appeal from the United States District Court of the Middle District of Florida arises from a pro se lawsuit brought by a state prisoner under 42 U.S.C. sec. 1983 against the Secretary of the Florida Department of Corrections and other state officials (the "defendants"). The inmate alleges that his first amendment right to the free exercise of religion was violated when he was disciplined for refusing to respond to the name under which he was

committed to prison rather than his subsequently adopted Islamic name. Defendants moved alternatively for a judgment on the pleadings or summary judgment. The district court granted this motion for defendants in their official capacities; but, it denied the motion in respect to their individual capacities. For the reasons set forth below, we believe the appellants-defendants were entitled to qualified immunity and that the district court erred by not granting their motion on this basis. Accordingly, we reverse.

Muhammad is an inmate at the Florida State Prison in Starke, Florida and was originally committed to prison in 1975 under the name Thomas Knight after receiving two death sentences. Subsequently, Knight converted to Islam and, pursuant to Fla.Stat. sec. 68.07, legally changed his name to Askari Abdullah Muhammad.[1] After changing his name, Muhammad was convicted of the first degree murder of a fellow inmate and again was committed to the Florida State Prison for his third death sentence under his newly adopted Muslim name.[2]

Pursuant to formal operating procedures, prison officials conduct a "master count" of all inmates at regular daily intervals. This procedure requires each inmate to stand by his cell door and respond with his assigned inmate classification number when a correctional officer quotes the inmate's name as the officer stands in front of the inmate's cell. This process may be reversed, that is, the officer may call out the inmate's number and the inmate may reply by stating his name. The purpose of the master count is to ensure that all inmates are in their assigned cell and to facilitate the detection of escape attempts so as to ensure the security and safety of inmates and prison employees.

Since changing his name, Muhammad has refused to respond with his committed name (Knight) whenever prison officials quote his inmate classification number or with his classification number whenever prison officials quote his committed name. As a result, disciplinary reports have been issued against him.

■ After exhausting the prison's internal grievance procedures, Muhammad filed a 42 U.S.C. sec. 1983 action alleging defendants had violated his first amendment right to the free exercise of his religion. Defendants moved for a judgment on the pleadings or summary judgment. The district court's order granted this motion for the defendants but only in regard to their official capacity and not in regard to their individual capacity. That part of the order denying defendants' claim of qualified immunity from personal liability to Muhammad forms the basis of this appeal.[3]

Determining "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action turns on the 'objective legal reasonableness' of the action," *Anderson v. Creighton*, — U.S. —, —, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982)). Under *Harlow's* objective standard government officials generally are shielded from liability for civil damages "insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2730 (emphasis added).

1. The April 7, 1981 order changing Knight's name only required that, "[t]he Department of Corrections shall make the appropriate notation on its records."

2. In an affidavit accompanying Appellants' Motion for Judgment on the Pleadings or Summary Judgment, a prison official indicated that "[o]nly if the initial sentence of death were vacated would the second commitment to custody status reflecting the name of Askari Abdulla Muhammad become effective." (Record 2–58–2).

3. An order denying the defense of qualified immunity is directly appealable under 28 U.S.C. sec. 1291 pursuant to the "collateral order" doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). *See generally Mitchell v. Forsyth*, 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2815–17, 86 L.Ed.2d 411 (1985).

■ The purposes served by shielding state actors with qualified immunity is not only to ensure that "the public interest [is] ... better served by action taken with independence and without fear of consequences," *id.* at 819, 102 S.Ct. at 2738 (quotations omitted), but also to avoid "the general costs of subjecting officials to the risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deference of able people from public service." *Id.* at 816, 102 S.Ct. at 2737. *See also Mitchell v. Forsyth,* 472 U.S. 511, 524, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). Thus, entitlement to qualified immunity means that the defendants are immune from suit rather than merely immune from liability for damages. *Mitchell,* 472 U.S. at 524, 105 S.Ct. at 2815. As noted, this determination hinges entirely upon whether the defendant's actions violated clearly established law. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2730; *Mitchell,* 472 U.S. at 530, 105 S.Ct. at 2818.

■ In his brief, Muhammad contends that, at the time of the actions to which he objects, this circuit had clearly established the legal standard of review to be used when evaluating the constitutionality of prison officials' action within the context of the first amendment. Muhammad further argues that because this area of the law was clearly established, defendants should not be permitted to avail themselves of qualified immunity. This conclusion, Muhammad continues, is also compelled by the fact that a district court outside of this circuit had held that an inmate had a federal constitutional right both to change his name for religious purposes and to insist that prison officials recognize the new name. Furthermore, Muhammad points to a November 20, 1981 letter from the General Counsel of the Florida Department of Corrections to the Superintendent of the Florida State Prison as evidence that defendants were aware of judicial precedent

and knew that disciplining Muhammad possibly violated his first amendment rights.[4]

We do not believe that defendants' action contravened clearly established legal principals at the time Muhammad filed his complaint. It is true that previous decisions of this court have addressed the appropriate standard of review to evaluate prison officials' actions in the context of the first amendment. *See, e.g., Walker v. Blackwell,* 411 F.2d 23 (5th Cir.1969) (validity of challenged prison practice assessed under "compelling state interest" test);[5] *Bradbury v. Wainwright,* 718 F.2d 1538 (11th Cir.1983) (validity of challenged prison practice assessed under "least restrictive means" test). Nevertheless, establishing a standard of review and applying that standard to concrete facts are not the same; the cases in this circuit, although acknowledging that prisoners generally retained limited first amendment rights to the extent those rights were compatible with the institution's needs of discipline and safety, cannot be said to have clearly established that Muhammad had a constitutional right not to be disciplined when he failed to respond to his committed name during the master count.

General propositions have little to do with the concept of qualified immunity. Broadly defining "clearly established law" as Muhammad suggests significantly undermines part of the rationale for the qualified immunity defense. As stated in *Harlow,* a partial justification for the immunity is that it helps "avoid excessive disruption of the government and permits the resolution of many insubstantial claims on summary judgment." *Harlow,* 457 U.S. at 819; 102 S.Ct. at 2730. Because *Harlow* relies upon the objective reasonableness of an official's conduct in relation to clearly established law when determining whether a defendant is entitled to qualified immunity, generalities are just not helpful. This phenomenon was recently noted by the Sev-

---

4. This letter exclusively relies upon *Masjid Muhammad–DDC v. Keve,* 479 F.Supp. 1311 (D.Del. 1979).

5. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

enth Circuit in *Azeez v. Fairman,* 795 F.2d 1296 (7th Cir.1986) which stated

> [t]he words 'clearly established ... constitutional rights' may not be used to read the defense of immunity out of federal tort law by the facile expedient of stating constitutional rights in the most general possible terms, so that anyone who prevails on the merits of a claim based on (for example) the First Amendment's free exercise of religion clause, however novel that claim is, can defeat the defense of immunity simply by pointing out that the right to the free exercise of one's religion has long been a clearly established constitutional right. The right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful.

*Id.* at 1301. Accordingly, unless a court's analysis is properly focused, "[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading." *Anderson,* — U.S. at ——, 107 S.Ct. at 3039.

To avoid this unintended result, the Supreme Court stated in *Anderson* that,

> the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: *The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.* This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preex-

isting law the unlawfulness must be apparent.

*Id.* (emphasis added). Especially in light of *Anderson's* language, we cannot say that in 1983, when his complaint was filed, it was apparent that disciplining Muhammad for not responding to his committed name during the prison's master count was unlawful.[6]

■ Nor do we believe that the November 20, 1981 letter to the Superintendent of the Florida State Prison helps Muhammad's case. In the letter, the General Counsel cited the factually similar case of *Masjid Muhammad–DCC v. Keve,* 479 F.Supp. 1311 (D.Del.1979), as an indication that Muhammad's first amendment rights might be violated. Such a letter, however, was plainly not binding because Florida officials are not bound to comply with every constitutional ruling by every federal district judge. *See generally State v. Dwyer,* 332 So.2d 333 (Fla.1976) ("A decision of a Federal District Court, while persuasive if well reasoned, is not by any means binding on the courts of the state." *Id.* at 335). *See also Azeez,* 795 F.2d at 1301.[7] Put differently, a district court opinion, particularly from outside the circuit, cannot, in and of itself, settle the law. Thus at the relevant time, defendants, at best, had only some reason to suspect that their actions might be unlawful. Such a suspicion is inconsistent with the "clearly established" standard enunciated by *Harlow* and its progeny.

We conclude, therefore, that defendants are entitled to qualified immunity. Accordingly, the order of the district court is *REVERSED* to the extent that it denied defendants immunity.

---

**6.** We cannot actually say, at the present time, that such action by prison officials is obviously unconstitutional. *See generally O'Lone v. Estate of Shabazz,* — U.S. ——, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

**7.** The Ninth Circuit's decision of *Capoeman v. Reed,* 754 F.2d 1512 (9th Cir.1985) also supports this conclusion. In *Capoeman,* the plaintiff, an inmate protesting the prison's grooming policies

for religious reasons, objected to a prison ordered haircut and directed the prison official to the leading authority supporting his position, *Teterud v. Burns,* 522 F.2d 357 (8th Cir.1975). *Id.* at 1513. Notwithstanding this earlier decision, the court "conclude[d] that it was not clear at the time in question what standard the Ninth Circuit would have applied." *Id.* at 1515.