**Hassan SHABAZZ, Appellee,**

v.

**Thomas A. COUGHLIN, III, Commissioner, and Harold J. Smith, Superintendent, Appellants.**

**No. 1273, Docket 88–2161.**

United States Court of Appeals, Second Circuit.

Argued June 16, 1988.

Decided July 27, 1988.

Martin A. Hotvet, Asst. Atty. Gen. (Robert Abrams, Atty. Gen., State of N.Y., Peter H. Schiff, Deputy Sol. Gen., Nancy A. Spiegel, Asst. Atty. Gen., of counsel), for appellants.

Stephen G. Schwarz, Faraci, Guadagnino, Lange & Johns, Rochester, N.Y., for appellee.

Before OAKES, MESKILL and PIERCE, Circuit Judges.

OAKES, Circuit Judge:

Hassan Shabazz brought a section 1983 action against prison officials alleging that he was unconstitutionally disciplined for violating regulations prohibiting group prayer and prayer in a prison yard. The officials filed a summary judgment motion claiming that they were entitled to qualified immunity. Judge Michael A. Telesca of the United States District Court for the Western District of New York denied the motion. Because we find that the unconstitutionality of prison regulations restricting prayer was not clearly established at the time that Shabazz was disciplined, we reverse.

## BACKGROUND

Hassan Shabazz is a practicing Muslim. As such he must offer demonstrative prayer five times a day at times determined by the sun's position.[1] Muslims also believe

---

1. [A] Moslem must offer a prayer five times a day at specified times determined by the position of the sun in the sky. The prayers involve physical movements: kneeling down, bending forward, touching the forehead to the ground, and motioning with the hands and arms. These actions consume about 5 to 12 minutes of time.
   *Abdullah v. Smith*, 115 Misc.2d 105, 107, 453 N.Y.S.2d 541, 543 (Sup.Ct.1982), *aff'd*, 96 A.D.2d 742, 465 N.Y.S.2d 81 (4th Dep't 1983).

that group prayer is preferable to individual prayer.

For several months in 1982, Shabazz was incarcerated at the Attica Correctional Facility, located in Attica, New York. Each cell block at Attica has a recreation yard used by inmates for a variety of recreational activities including lifting weights, playing cards, and viewing television. In 1982, prisoners were permitted to enter the yard in the afternoon and in the evening, after dinner. Once in the yard, prisoners had to remain there until the guards called "early in" or the yard closed, which was around 10:00 p.m. during the summer.

On July 29, 1982, Correctional Officer Russell Beasor made two announcements for "an early in for Muslim prayers" at 8:15 p.m. Forty-five minutes later, he found Shabazz praying while facing the yard wall. Prison authorities charged Shabazz with violating a statewide rule which requires compliance with all posted local facility rules, Standards of Inmate Behavior Rule 180.20, and Attica Correctional Facility Inmate Rule 17.9 which prohibited religious services in the recreation yards and in groups of more than six inmates. Rule 17.9 was promulgated to effectuate New York State Department of Correctional Services Directive 4202(I) which restricts group or demonstrative prayer to prisoners' living quarters and to religious services authorized by the superintendent of the prison.[2] After a hearing, Shabazz was found guilty and given five days' continuous confinement and ten days' loss of recreation.

On August 18, 1982, at about 7:00 p.m., Shabazz was one of ten Muslim inmates in the recreation yard who "form[ed] a circle, turn[ed] their palms up and [held] a religious gathering which lasted no more than thirty seconds." The gathering was so brief that the correctional officer who observed the event could identify only Shabazz and one other prisoner as participants. After disciplinary procedures were completed, Shabazz was confined to his cell for five days and lost recreational privileges for ten days.

Shabazz pro se filed a section 1983 action challenging the prison restrictions on prayer in the yard and seeking declaratory, injunctive, and monetary relief, including compensatory and punitive damages, as well as attorney's fees. The named defendants were Thomas A. Coughlin, III, the Commissioner of the New York State Department of Correctional Services, and Harold J. Smith, the Superintendent of Attica Correctional Facility, who were sued "personally and in [their] official capacity."

The defendants' answer alleged as affirmative defenses, inter alia, that damages were barred by qualified immunity and by the Eleventh Amendment. They moved for summary judgment on qualified immunity grounds. The district court denied the motion. This interlocutory appeal ensued pursuant to *Mitchell v. Forsyth*, 472 U.S. 511, 524–30, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (denial of summary judgment motion made by public official upon qualified immunity grounds is immediately appealable).

## DISCUSSION

■ Coughlin and Smith argue that monetary damages are barred by both the Eleventh Amendment and qualified immunity. As a preliminary matter, Shabazz argues that this court should not consider the Eleventh Amendment issue because Coughlin and Smith did not raise it before the district court. We disagree for several reasons. First, although the defendants' summary judgment motion did not assert an Eleventh Amendment defense and the district court did not address the issue, Coughlin and Smith's answer stated "[t]hat this action is barred in whole or in part by the Eleventh Amendment to the United States Constitution." Second and more significantly, "the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be

---

**2.** New York State Department of Correctional Services Directive 4202(I) reads as follows:

Group or demonstrative prayer by inmates will be allowed only in the privacy of their living quarters or during a religious service authorized by the Superintendent or in an area of the facility that has been designated by the Superintendent for religious worship.

raised in the trial court." *Edelman v. Jordan*, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974); *see generally* 1 *Moore's Federal Practice* ¶ 0.60(4), at 633 (1988). We also note that "decisions regarding eleventh amendment immunity may be tested on appeal under the collateral order doctrine." *Smith v. Reagan*, 841 F.2d 28, 30 (2d Cir.1988) (citing *Minotti v. Lensink*, 798 F.2d 607 (2d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987)).

■ In assessing whether the Eleventh Amendment bars recovery in this action, this court must decide whether Shabazz sued the defendants in their personal or official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 165–68, 105 S.Ct. 3099, 3104–06, 87 L.Ed.2d 114 (1985). Personal or individual capacity suits seek to impose personal liability upon a government official for actions he or she took under color of state law. *See id.* at 165, 105 S.Ct. at 3104. Official capacity suits, on the other hand, are, in all respects other than name, suits against a government entity. *Id.* at 165–66, 105 S.Ct. at 3104–05. Notwithstanding the complaint's ambiguous language and the defendants' numerous affirmative defenses, Shabazz's request for punitive and compensatory damages, coupled with the defendants' summary judgment motion on qualified immunity but not Eleventh Amendment grounds, suggests that the parties believed that this action is a personal capacity suit. *See id.* at 166–67, 105 S.Ct. at 3105; *Farid v. Smith*, 850 F.2d 917 (2d Cir.1988); *Hadi v. Horn*, 830 F.2d 779, 783 (7th Cir.1987). As defendants in such an action, Coughlin and Smith are entitled to assert personal immunity defenses such as qualified immunity, *see Graham*, 473 U.S. at 166–67, 105 S.Ct. at 3105; *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), but not the Eleventh Amendment bar, which by definition is available only to government entities.

■ This court recently reiterated that qualified immunity "shields government officials performing discretionary functions from liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Walsh v. Franco*, 849 F.2d 66, 68 (2d Cir.1988) (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738); *see also Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Robison v. Via*, 821 F.2d 913, 920–21 (2d Cir.1987). Coughlin and Smith contend that they are entitled to qualified immunity because "it was not clear at the time of the official acts that the interest asserted by the plaintiff was protected by a federal statute or the Constitution." *Walsh*, at 69 (quoting *Robison*, 821 F.2d at 920). We agree, because in 1982 there was a "legitimate question," *Mitchell*, 472 U.S. at 535 n. 12, 105 S.Ct. at 2820 n. 12, as to whether a prisoner had a right to engage in group prayer or to pray in the prison yard.

At the time that Shabazz was disciplined, to be sure, a prisoner's right to engage in religious practices was generally accepted, *see Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam); *Mawhinney v. Henderson*, 542 F.2d 1, 3 (2d Cir.1976); *Burgin v. Henderson*, 536 F.2d 501, 503 (2d Cir.1976); *LaReau v. MacDougall*, 473 F.2d 974, 979 (2d Cir. 1972), *cert. denied*, 414 U.S. 878, 94 S.Ct. 49, 38 L.Ed.2d 123 (1973). This court permitted limitations upon a prisoner's freedom of religion only "if the state regulation has an important objective and the restraint of religious liberty is reasonably adapted to achieving that objective." *Burgin*, 536 F.2d at 503 (quoting *LaReau*, 473 F.2d at 979). However, as the district court conceded, this court had not then nor since directly addressed the constitutionality of restrictions on group prayer and prayer in prison yards. *Compare Abdullah v. Smith*, 115 Misc.2d 105, 453 N.Y.S.2d 541 (Sup.Ct.1982) (restrictions on group Muslim prayer in recreation yard unconstitutional under state law), *aff'd*, 96 A.D.2d 742, 465 N.Y.S.2d 81 (4th Dep't 1983). In fact, in *Aziz v. LeFevre*, 642 F.2d 1109 (2d Cir. 1981) (per curiam), only one year before Shabazz was disciplined, this court faced a factual situation almost identical to the

present case and expressly declined "to reach the difficult constitutional question presented." *Id.* at 1112 (reversing summary judgment due to factual disputes).

Of course, under certain circumstances, the absence of specific authority directly on point will not preclude a finding that the law was clearly established. *See, e.g., Weber v. Dell,* 804 F.2d 796 (2d Cir.1986). In *Weber v. Dell* we held that a 1982 strip/body cavity search of an arrestee charged with a misdemeanor, absent a reasonable suspicion that the arrestee was concealing a weapon or contraband, violated the Fourth Amendment and that officials who conducted that search were not entitled to qualified immunity. Although the Second Circuit had not previously ruled on the constitutionality of such searches, several of our decisions had condemned the practice, and seven other circuits had held such searches unconstitutional, three in decisions antedating the search in *Weber. Id.* at 801 n. 6, 803. We also noted that the absence of cases in the Second Circuit contesting the constitutionality of such searches was in part because numerous government authorities had already seen the writing on the wall, and had abandoned or declined to establish policies calling for routine strip/body cavity searches of all persons resisting arrest. *Id.* at 804.

There are no similar circumstances here which would permit a finding that the law was "clearly established." *Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Giacalone v. Abrams,* 850 F.2d 79, 85 (2d Cir. 1988). No decisions in this circuit clearly foreshadow a ruling on the constitutionality of the restrictions at issue in this case. Nor are there cases in other circuits condemning or condoning such practices. There is therefore little to guide this court in determining the likelihood that the Supreme Court or this circuit would have recognized the prisoners' rights to pray in groups or in the prison yard. *Cf. Capoeman v. Reed,* 754 F.2d 1512, 1515 (9th Cir.1985) (Native American's right to wear hair long for religious reasons not "clearly established"). Not only had no other circuit ruled on the constitutionality of the restrictions at issue herein, but few of the circuits that had adopted a standard for assessing a prisoner's First Amendment challenges to prison regulations had applied the Second Circuit standard. *See, e.g., Capoeman,* 754 F.2d at 1513–16 (standard unclear in 1981); *Sweet v. South Carolina Dep't of Corrections,* 529 F.2d 854, 863 (4th Cir.1975); *see Madyun v. Franzen,* 704 F.2d 954, 960 n. 7 (7th Cir.) (deference to prison administrators absent a showing by substantial evidence that challenged policy constitutes an exaggerated response to security considerations), *cert. denied,* 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983); Comment, *The Religious Rights of the Incarcerated,* 125 U.Pa.L.Rev. 812, 837–56 (1977) (circuits followed at least seven different standards when analyzing prisoner free exercise claims). Moreover, although the Supreme Court recently reaffirmed a reasonableness standard for assessing the constitutionality of prison regulations, *O'Lone v. Estate of Shabazz,* —— U.S. ——, 107 S.Ct. 2400, 2404–05 & n. **, 96 L.Ed.2d 282 (1987) (expressly rejecting the more rigorous scrutiny proposed by a recent Second Circuit case, *Wali v. Coughlin,* 754 F.2d 1015, 1033 (2d Cir.1985)), it is far from clear that the restrictions on prayer at issue in this case violate that standard given the many decisions that have upheld other restrictions on Muslim prisoners' free exercise rights. *See, e.g., O'Lone,* 107 S.Ct. 2400 (policies prohibiting prisoners working outside the main building to attend weekly Muslim congregational service held in prison held reasonable); *Matiyn v. Henderson,* 841 F.2d 31, 37 (2d Cir.1988) (restriction on congregate services held reasonable), *cert. denied,* —— U.S. ——, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988); *Muhammad v. Wainwright,* 839 F.2d 1422 (11th Cir.1987) (failure to use Islamic name held reasonable); *Hadi v. Horn,* 830 F.2d 779 (7th Cir.1987) (occasional cancellation of services reasonable); *Butler–Bey v. Frey,* 811 F.2d 449 (8th Cir.1987) (restriction on wearing fezzes outside services reasonable); *Azeez v. Fairman,* 795 F.2d 1296, 1300–01 (7th Cir.1986)

(requiring inmates to use statutory procedure for name change reasonable); *Abdullah v. Kinnison,* 769 F.2d 345 (6th Cir. 1985) (restrictions on wearing of white prayer robes outside chapel reasonable).

As neither the case law in 1982 nor since then in this circuit or elsewhere demonstrates that the law on prison restrictions on prayer was clearly established at the time that Shabazz was disciplined and the Attica Rule 17.9 was promulgated, we believe that the district court erroneously denied Coughlin and Smith's summary judgment motion.

Accordingly, we reverse.